# MANHATTAN BRASS COMPANY
## v.
## BENJAMIN C. ALLIN ET AL.

*Limited Partnerships—Liability as General Partners—Certificate.*

1.   The statute authorizing limited partnerships must be substantially complied with, or those who associate under it will be liable as general partners, and notice to creditors that the debtors only expected or intended to be liable as special partners, will not restrict their liability.

2.   The contribution of "a specific amount of capital in cash, or other property at cash value," is not fulfilled by postponing the payment of the indebtedness to the special partners due from a preceding insolvent firm, until the new one shall have paid the other creditors of the old one.

3.   In the case presented, this court holds that the defendants were liable as general partners, and that the judgment against the plaintiff can not stand.

[Opinion filed February 12, 1890.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Mr. FREDERIC ULLMANN, for appellant.

Allin, the general partner, makes oath that the amounts specified in the certificate to have been contributed by the special partners to the common stock were paid at cash value "in goods, wares and merchandise, and by cancellation of indebtedness for money borrowed from each of said special partners."

This is not the affidavit required, and the special partners would have been liable as general partners, even without the express provision to that effect contained in the statute.

In Van Ingen v. Whitman, 62 N. Y. 519, the court say with reference to the statute of New York:

"The amount contributed by the special partner is an essential part of the terms of the partnership. The mode of contribution is just as explicitly fixed as that there shall be a

contribution; and it is just as explicitly required that the mode of contribution prescribed by the statute shall be followed and shall be averred in the affidavit, as that there shall be an amount of contribution, and that the true amount shall be stated. To guard against unsafe practices, and to secure the public against even innocent deception, or mistake, the statute demands that a limited partner shall pay into the capital a sum which he shall specify; that he shall make actual 'cash payment' of that sum; that there shall be an affidavit of a general partner that such specific sum has been 'actually and in good faith paid in cash;' and that notice shall be advertised of that sum and of its payment. Certainly the statute meant cash, which is money in hand, and not credits of the special partner or other person, however available, nor real estate, however valuable, nor merchandise, however salable. It was not meant to permit something supposed to be equivalent to money to be put in as capital, and so the door be opened for dispute and inquiry as to the real value of such a substitute, with ofttimes doubtful and unsatisfactory results. The purpose was that the limited partnership should start in its business on a fixed and certain basis, with a sum in its possession of that which does command the markets, and makes the possessor of it equal as a buyer to any other, and to its extent as solvent as any other. It is not a substantial compliance with the statute to substitute for that some other thing, however convertible at the time, but which must be under the hazards and fluctuations of business, as to its readiness of convertibility and amount of production. Nor need there be an intentional false statement to bring the parties within the reprehension of the statute. The object of the statute is, by the payment into the capital of a specified sum in cash, to give reasonable security to the portion of the public likely to deal with the partnership, and to insure the payment of that sum; thus it requires the affidavit that the payment thereof has been thus made before the partnership can start as a limited one."

This case was approved in Pfirmann v. Henkel, 1 Ill. App. 145, where the Appellate Court held the general doctrine,

that it is the plain duty of the special partners to see that the requirements of the statute are complied with, and until they are complied with the partnership is a general one. To the same effect see Henkel v. Heyman, 91 Ill. 97, and Haviland v. Chase, 39 Barb. 283.

Messrs. ABBOTT, OLIVER & SHOWALTER, for Holly Publishing Company.

Mr. FRANK C. CALDWELL, for Mrs. Josie T. Allin.

GARY, P. J.   In 1886 the firm of Wilbur & Allin, crockery merchants in Chicago, became insolvent and made an assignment for the benefit of their creditors. Subsequent negotiations between them and their creditors resulted in an agreement, as follows:

"NOVEMBER 23, 1886.

"Whereas, the firm of Wilbur & Allin, of Chicago, Ills., is insolvent, and unable to pay their debts in full; now, therefore, in consideration of the premises and of the sum of one dollar to us in hand paid, the receipt of which we hereby acknowledge, we, the undersigned, creditors of said Wilbur & Allin, do hereby agree to accept fifty per centum in full payment and settlement of the several sums due us by the said Wilbur & Allin, in manner following, to wit:

" A partnership to be formed with Benjamin S. Allin as general partner, and the following names as special partners, to wit: Henry J. Luders, special capital four thousand dollars ($4,000), the Park National Bank, or Mrs. Josie T. Allin, special capital of two thousand eight hundred dollars ($2,800) William H. Paden, special capital of twenty-five hundred dollars ($2,500), and Edward T. Keyes, special capital of twelve hundred dollars ($1,200), in all ten thousand five hundred dollars ($10,500). The sum of $10,500 representing the present claims for borrowed money from the said special partners by the said Wilbur & Allin, and which said sum will be deducted from the total liabilities of about $49,345.30, thereby reducing the claims against the said Wilbur & Allin in that amount.

Manhattan Brass Co. v. Allin.

The said partnership, under the name and style of the Chicago Crockery Company, or such other name as may be adopted on or before the completion of this settlement, to give to us their six several promissory notes in equal installments, at two, four, six, eight, ten and twelve months from December 15, 1886, aggregating fifty per centum of the amount due us respectively.

"The condition of this agreement being such that all of the partners hereto agree not to draw any part of their special capital in the said co-partnership until each and all of the notes given to us, respectively, shall have been duly paid, and that this agreement shall be signed by all of the creditors within thirty days from the date hereof (excepting only those whose respective claims shall not exceed the sum of fifty dollars ($50).

"It is hereby understood and agreed, that upon the signing of this agreement by all the creditors, as above provided, all proceedings under the assignment of the said Wilbur & Allin may be discontinued, and the assets turned over to said partnership, as above mentioned.

"In witness thereof we have hereunto set our hands, as of the day and year above mentioned."

Copies of said certificate and affidavit filed in organizing the special partnership follow, the signature omitted. Copy of said certificate :

"Certificate of limited partnership, in conformity with the statute concerning limited partnerships.

"We, the undersigned, do hereby certify that we have formed a limited partnership, to be conducted under the name and firm of B. C. Allin & Co., in the wholesale and retail crockery business, and everything to the said business appertaining; that the undersigned, Benjamin C. Allin, who resides in Chicago, Cook county, Illinois, is interested in the said co-partnership as a general partner, and that Edward T. Keyes, M. A. Luders, Josie T. Allin, William H. Paden and the Holly Publishing Company, who each reside in the said city of Chicago, are interested in said co-partnership as special partners, and as such special partners have each contributed to the common stock as follows, to wit:

Edward T. Keyes........................$1,223.47
M. A. Luders........................... 3,910.83
Josie T. Allin......................... 1,393.33
William H. Paden....................... 3,216.12
The Holly Publishing Company.......... 1,209.18

Making the united sum of...............$10,952.93
of capital stock contributed by the special partners to the
common stock.

"The said partnership to commence on the 10th day of January, A. D. 1887, and to terminate on the 10th day of January, A. D. 1888. It is mutually agreed that the partnership shall not be dissolved by the death of the partners. Made and severally signed by the said partners at the said city of Chicago, the 10th day of January, A. D. 1887."

Affidavit as follows:

"STATE OF ILLINOIS, } ss.
   Cook County. }

"Benjamin C. Allin, of said county, having been duly sworn, deposes and says that he is the general partner named in the foregoing certificate by him subscribed, and that the amount of money, that is to say, the sum of $10,952 93-100 dollars, as specified in said certificate, has been contributed as follows, to wit:

By Edward T. Keyes...................$1,223.47
M. A. Luders......................... 3,910.83
Josie T. Allin....................... 1,393.33
William H. Paden..................... 3,216.12
The Holly Publishing Company......... 1,209.18

"Each as special partners as therein named to the common stock of said partnership, has been actually and in good faith contributed and paid by each of said special partners at cash value in goods, wares and merchandise, and by cancellation of indebtedness for money borrowed from each of said special partners, and has been duly applied to the common stock of said co-partnership."

This partnership so formed, also failed in October, 1887.

The note upon which this suit is brought, is one given pur-

suant to the terms of the agreement of which a copy is above shown, and the question is, are the appellees who signed the certificate and are mentioned in the affidavit as special partners, entitled to protection as special partners under the statute, or liable as general partners under the common law?

It may be a hard case, and contrary to what the parties intended, but did not express, to hold the appellees, other than B. C. Allin, as general partners; but the law is settled that "the statute authorizing limited partnerships must be substantially complied with, or those who associate under it will be liable as general partners." Henkel v. Heyman, 91 Ill. 96. And notice to the creditor that the debtors only expected or intended to be liable as special partners, will not restrict their liability. Andrews v. Schott, 10 Pa. St. 47.

The departure in the formation of this partnership, from the provisions of the statute, is so radical that no comment can make it more plain. A contribution of "a specific amount of capital in cash, or other property at cash value," is not made by postponing the payment of the indebtedness to the special partners due from a preceding insolvent firm, until the new firm shall have paid the other creditors of the old one. The preliminary agreement provided only that certain acts should be performed; the effect of those acts when performed, is to be determined by the general law, unless the parties make a special contract effectually excluding that result.

The finding and judgment for the defendants below was erroneous, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*