148  587
64a 618

## WILLIAM GRINTON

*v.*

## WILLIAM A. STRONG et al.

*Filed at Ottawa October 26, 1893.*

1. PARTNERSHIP—*whether it exists—principal and agent—division of profits.* Even where parties agree to enter into a joint enterprise and share in the profits, a partnership, as between themselves, is not necessarily the result. The intention of the parties always controls.

2. A employed B to manage his business affairs generally, and to collect rents, debts, etc.; and to make investments, and agreed to pay the latter three per cent on all amounts collected for rents, and also to pay him out of the net income of the personal capital one-fifth of every transaction, which was to be entered in the proper accounts, said ac-

counts to be balanced on the first of every month, "one-fifth of such balance to be charged to A and credited to B," and the contract further provided that when B should receive any and all of such net proceeds realized from the transaction before specified, it should be upon the check of A, and by another clause in the contract B was made liable for one-fifth of the losses for any business done by him : *Held*, that such agreement did not constitute a partnership between the parties, but the relation created was that of principal and agent.

3. By the fourth clause of the agreement B was required "to use the personal capital of the party of the first part (A) in all legitimate transactions, such as he shall approve, for the purpose of producing an income from said capital," and by the seventh clause was "to receive from the net income of the personal capital one-fifth of every transaction :" *Held*, that the words "net income of the personal capital," did not mean an increased value in real estate bought with A's means.

4. In such case the personal capital belonged to A, and any property purchased with it, real or personal, also belonged to him. If that property increased in value, the profit was his. While he owned it, and while the contract remained in force, B was entitled to one-fifth of the net income derived from it, and nothing more.

5. CONTRACT — *construction — adopted by the parties.* The rule of construction which permits resort to extrinsic evidence in the construction of a written contract, as showing how the parties treated the same, has no application to a contract which is clear and unequivocal in its terms as to the rights of the parties. In such case the rights of the parties are fixed and controlled by the contract.

6. WITNESS—*competency of party in suit against representatives of a deceased person.* On bill against the executors and trustees of a deceased person, to recover for money due complainant from the estate of the testator, the complainant is not a competent witness in his own behalf to establish his claim.

APPEAL from the Appellate Court for the Second District ;— heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

Mr. GEORGE S. HOUSE, for the appellant.

Messrs. HAMLINE, SCOTT & LORD, for the appellees.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

On the 8th day of February, 1879, Martin C. Bissell, as party of the first part, and William Grinton, Jr., of the second part, entered into the following agreement in writing:

"Article of agreement made and entered into this 8th day of February, A. D. 1879, between Martin C. Bissell, of the county of Will and State of Illinois, party of the first part, and William Grinton, Jr., of the same place, party of the second part.

"Party of the second part is to look after all the lands and buildings owned by the party of the first part or in his charge, except the dwelling in which said first party now resides; is to rent the same to the best advantage, to make said rental produce the greatest amount of income; to see that all, both real and personal, property of the first party is assessed equitably, or as low as other property of the same character in the location of those owned by him; is to collect rents; also, to see that all buildings and other property are kept in repair, including such lands and tenements as may be in charge or under control of said first party, belonging to others.

"Party of the second part is to do all the private business of the party of the first part that he may request or desire, including all his dealings with whomever he may have business transactions; is to make all deeds, contracts, mortgages, as well as all other descriptions of writing he may wish done; to attend to the collection of all amounts due said first party, whether mortgages, notes, contracts, accounts or other claims. Second party shall, at the solicitation of the first party, go wherever he may direct, on his private business, he, the first party, paying all expenses incurred.

"Party of the second part is to use the personal capital of the party of the first part in all legitimate business transactions, such as he shall approve, for the purpose of producing an income from said capital.

"The party of the second part is to furnish and keep an office, to be located wherever the party of the first part shall direct, and the party of the first part shall be permitted to occupy a portion of said office, having the privilege of putting a desk and table in the same for his private use, and shall be allowed to pass and repass whenever he chooses to do so.

"Party of the second part is to keep the books of the first party by double entry, in which each and every transaction that belongs to said first party, including the principal invested, interest, commissions and discounts, is to be kept in separate and distinct accounts, and so entered in the ledger.

"In consideration of the party of the second part's faithful performance of the agreements above specified, he is to receive three (3) per cent on all amounts collected for rents, said rent account to be kept separate from other transactions; is also to receive from the net income of the personal capital one-fifth (1-5) of every transaction, which is to be entered in the proper accounts, said accounts to be balanced on the first of every month, one-fifth of said balance to be charged to party of the first part and credited to the party of the second part, and whenever the party of the second part shall receive any or all of his interest of the net proceeds realized from the transactions before specified, it shall be upon the check of the party of the first part.

"The party of the second part may have the privilege of selling or trading any property of the first part, provided the parties hereto shall agree upon the value of the property under consideration before an exchange is made, and if the property or cash he gets in exchange is worth more than the property given, the party of the second part is to have one-half (1-2) of the excess value.

"Party of the second part is to collect up all transactions made by him, and all losses from any business done by him under this agreement he shall make one-fifth (1-5) of such good.

"The party of the second part is to enter, in books to be provided by the party of the first part, all transactions, showing the amount and the particulars of each. The party of the second part is not to receive his claim against the party of the first part any faster than it is paid in, then he has a right to it.

"The incidental business of the office, after paying the expenses, rents, fire, lights, etc., may be divided equally between the parties hereto. The taxes paid on the personal capital employed under this contract, in which both parties have a share of the profits, shall be charged up as part of the expenses, party of the first part paying four-fifths and party of the second part one-fifth.

"This contract may be terminated at any time by either party giving to the other at least thirty days' notice, in writing, of his desire to end this contract.

"In witness whereof, said parties have hereunto set their hands and seals the day and year first above written.

> M. C. BISSELL,     [Seal.]
> WM. GRINTON, Jr.,  [Seal.]

In presence of H. HURLBUT."

Bissell died testate on the 12th day of May, 1888, having by his last will and testament bequeathed, after the payment of his funeral expenses and debts, all his estate, both real and personal, to certain persons in trust, who were also named executors of his will. The will was duly probated in the county court of Will county, and the executors properly qualified. To the May term, 1889, of the circuit court of said county, appellant filed his bill in chancery against the executors and trustees under the will, and other parties interested in the estate of Bissell, praying for an accounting under said agreement. The circuit court, by its decree, allowed the complainant one-fifth of the net income of the personal capital of Bissell for and during the period between February 8, 1879, and May 12, 1888, after the payment of one-fifth of the taxes and ex-

penses, etc., covered by the contract. It also allowed him an accounting at the rate of one-fifth of all net rents received from real estate acquired by personal capital after February 8, 1879, an accounting of any interest which accrued after that date, at the rate of one-fifth, which was satisfied by the taking of real estate in satisfaction of any mortgaged indebtedness, and an accounting of the net proceeds of all sales of property, real or personal, belonging to Bissell, over and above the value placed by agreement of him and Bissell, at the rate of one- half of such net proceeds. This decree allowed all that was claimed by the bill, except an interest in certain real estate the title to which was in Bissell at his death, as to which the decree was in favor of the defendant. To reverse that part of the decree complainant appealed to the Appellate Court, but that Court affirmed the decree below, and he now brings the record here.

The only question submitted for our decision is, did the circuit court err, on the case made, in refusing to allow appellant's claim to an interest in the real estate described in the bill. He claims by his bill an interest in fourteen different tracts of land, which he alleges was acquired by him, acting under the foregoing contract, either by the enforcement of liens to collect debts due Bissell, or by direct purchases with personal capital belonging to the latter. The allegations of the bill as to each of these tracts are substantially the same, and as follows: "That by the consent of Bissell, complainant, out of such personal capital, made a certain loan, which was secured by mortgage on sub-lot 3, etc.; * * * that default was made in the payment of the debt, and complainant took title to the property, in the name of Bissell, in satisfaction of the mortgage debt; that at this time the total investment in this property was $2000; that this property was improved, and appellant attended to the collection of the rents, and the amount thus collected was $662.24, leaving the investment in said property at $1337.76; that the differ-

ence between this investment and the present value is profits; that the present value is $2800; that appellant, as against Bissell, had, and against his trustees has, an interest in this property to the extent of one-fifth of said profits; that the title thereto was acquired by Bissell subject to such charge, and passed to his trustees subject to an equitable lien therefor in favor of complainant, and so remains."

The original bill also contained the following averment: "That it was the understanding and agreement of your orator and Bissell, in the transaction of said business under said agreement, that whenever their business relationship should terminate, then, in the adjustment of accounts of your orator and Bissell, under said agreement, the valuation of the estate in which they were each interested under said agreement should be determined by mutual agreement, if they should be so able to agree, and in the event of such an agreement, the interest of each in said property be computed upon the basis of such agreed valuation at the date of such agreement, and in the event that the valuation of any such real estate could not be arrived at and determined by mutual agreement, then such valuation should be determined in some other proper manner, and the several interests of the parties computed on the basis of the value then determined; that upon the determination of such valuation in either of the modes above mentioned, Bissell was at liberty to retain such real estate free from any lien of your orator, upon first making payment of his interest thereon under such agreement, computed upon such valuation at the date of the determination, the equitable lien of your orator in and upon said real estate to continue to his benefit, charged and secured, until the adjustment or payment to your orator of his full interest therein; that on an accounting had, there would be due complainant, under said agreement, over $10,000, after allowing all just credits."

The defendants answered, admitting the execution of the agreement of February 8, 1879, and that the parties acted in

38—148 ILL.

pursuance thereof to the date of the death of Bissell, and averred that there was no other or different agreement existing between the complainant and Bissell, and expressly denying that by the terms of that agreement, or by any proper construction of the same, the complainant was entitled to an interest or share in the real estate mentioned in the bill, or that he had a lien upon the same, equitable or otherwise.

After a part of the evidence had been taken, complainant, by leave of court, filed an amendment to his bill; but in our view of the case that amendment, and the issues made thereon, are unimportant in the decision of the case, first, because there was no competent proof of the facts therein alleged; and second, because it, in effect, made the same case as to complainant's claim to an interest in the real estate as is made by the original bill. Complainant himself was the only witness testifying to the facts set up in the amendment, and he was clearly incompetent for that purpose. His action was against the executors and trustees of a deceased person, and he could not therefore testify in his own behalf. Starr & Curtis' Stat. sec. 2, chap. 51, p. 1072; *Connelly* v. *Dunn,* 73 Ill. 218; *Treleaven* v. *Dixon,* 119 id. 548; *Way* v. *Harriman et al.* 126 id. 132.

We have also examined the record with care, and find no proof whatever to support the allegations of the original bill, to the effect that there was an understanding between appellant and Bissell as to the manner in which the accounts between them could be adjusted upon the termination of their business relations, and wherein it is averred, "that upon the determination of such valuation in either of the modes mentioned, Bissell was at liberty to retain such real estate free from any lien of your orator, upon first making payment of his interest thereon under such agreement." The question before us must therefore be determined upon the agreement of February 8, 1879, and that alone.

The theory of the bill is, that by the terms of that agreement, if, in the management of Bissell's business, personal capital became invested in real estate, either by direct purchase or the enforcement of liens, and such real estate afterwards increased in value, the complainant is entitled to one-fifth of that increase, and a lien upon the land in the hands of Bissell, or his representatives, for the same. To support this theory the seventh clause of the agreement is relied upon. It provides that appellant shall receive three per cent on rents collected, and "also to receive from the net income of the personal capital, one-fifth of every transaction, which is to be entered in the proper accounts, said accounts to be balanced on the first of every month, one-fifth of said balance to be charged to the party of the first part and credited to the party of the second part, and whenever the party of the second part shall receive any or all of his interest of the net proceeds realized from the transaction before specified, it shall be upon the check of the party of the first part." It seems to be thought that this clause, construed with others, created a co-partnership between the parties as to real estate procured with personal capital, and that it should be treated as personalty for the purpose of the accounting sought by the bill. This position is wholly untenable. There is nothing in the contract to justify the conclusion that the parties intended thereby to create a partnership, and none of the essential elements of such an agreement are to be found in it. The relation of the parties, by the terms of the contract, is so clearly that of principal and agent that no logical argument has or can be adduced to the contrary. By the eighth clause, under special circumstances, appellant might receive one-half of the excess value of real estate; but that clause falls far short of creating a partnership between the parties even as to property obtained as therein provided. But if it did, there is no pretense that that clause has any application to the land

here in question. The decree gave him all he claimed under the eighth clause. The ninth clause makes appellant liable for one-fifth of all losses for any business done by him under the agreement, but it is surprising that it should be seriously contended, in view of the other provisions of the contract, that an intention to create a partnership interest in the property purchased by appellant with personal capital is by that clause indicated. Even where parties agree to enter into a joint enterprise and share in the profits, a partnership, as between themselves, is not necessarily the result. The intention of the parties always controls. *Stephens* v. *Faucet et al.* 24 Ill. 483; *Fougner* v. *First Nat. Bank,* 141 id. 124.

The contention that Bissell, in his lifetime, by his conduct and declarations, placed the construction upon the contract now contended for by appellant, is unsupported by the evidence. But if it were otherwise, the rule of construction which permits resort to extrinsic evidence has no application here, for the reason that this contract is clear and unequivocal in its terms as to the rights of the parties, and they are therefore fixed and controlled by it. (2 Parsons on Contracts, 499; *Stettauer et al.* v. *Hamlin,* 97 Ill. 312; *Bearss et al.* v. *Ford,* 108 id. 16.) The compensation which appellant was to receive for investing the personal capital of Bissell is as clearly stated in the contract as language can state it. By the fourth clause he is required "to use the personal capital of the party of the first part in all legitimate transactions such as he shall approve, *for the purpose of producing an income from said capital.*" By the seventh clause he is "to receive, from the *net income of the personal capital,* one-fifth of every transaction." Is there any uncertainty, in the light of these two clauses, as to what the parties meant by the language, "*net income of the personal capital?*" Will it be seriously contended that the words "*net income,*" as here used, mean an increased value in real estate? If there was the slightest doubt on this question,

the subsequent language of the seventh clause would refute all idea that appellant was to be compensated out of "*the increased value of real estate.*" It is there stated that the accounts shall be balanced on the first of every month, one-fifth of said balance to be charged to Bissell and credited to appellant, and whenever the party of the second part shall receive any or all of his interest of the net proceeds realized from the transaction before specified, it shall be upon the check of the party of the first part. If, under the fourth clause, personal capital was invested in real property, appellant was entitled to one-fifth of the income of that property,—rents and profits. If loaned or invested in securities of any kind producing income, as required by the fourth clause, he was entitled to one-fifth of the interest or other income produced by the investment. There is no more reason for saying, in the face of the plain provisions of this contract, that appellant became interested in real estate purchased with money of Bissell, than there would be for insisting that he had an interest in money loaned or invested in bonds or other securities. The personal capital belonged to Bissell, and any property purchased with it, real or personal, also belonged to him. If that property increased in value the profit was his. While he owned it and the contract remained in force appellant was entitled to one-fifth of the net income derived from it, and nothing more. This conclusion we regard so clearly expressed in the agreement of the parties that no argument or illustration can make it clearer.

The decree of the circuit court is clearly right, and it will be affirmed.

*Decree affirmed.*