# GILES ET AL. *v.* VETTE ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SEVENTH CIRCUIT.

No. 59. Argued October 9, 10, 1923.—Decided January 7, 1924.

1. A limited partnership could not be formed under the Illinois Limited Partnership Act of 1874, until the certificate had been filed in the office of the county clerk. P. 559.

2. Where this was not done until the Uniform Limited Partnership Act (1917) had displaced the Act of 1874, and the plan was to conduct a brokerage business, a purpose not authorized under the later act, the attempt to form a limited partnership was abortive. *Id.*

3. In Illinois, the question of partnership, as between the parties, is one of intention, to be gathered from the facts and circumstances. *Id.*

4. Persons who contributed capital to a firm and received profits, but under a legally ineffectual agreement for a limited partnership and without real or apparent authority to bind the firm, and who returned the dividends with interest when it became bankrupt, *held* not to have become general partners under the Uniform General Partnership Act, Illinois, 1917. P. 560.

5. Mere representation, on mistaken belief, that one is a limited partner, will not make him liable as a general partner to creditors of the firm, who were not injured thereby. General Partnership Act, *supra*, § 16. P. 561.

6. Section 11 of the Uniform Limited Partnership Act, Illinois, providing that a person who has contributed to the capital of a business erroneously believing that he has become a limited partner shall not, by reason of his exercise of the rights of a limited partner, be deemed or held liable as a general partner, provided, on ascertaining the mistake, he promptly renounces his profits in the business, etc.,—should be construed liberally, and not restricted to cases where there were attempts to organize limited partnerships under that act. *Id.*

7. Under the act last cited, § 6, a false statement in a limited partnership certificate, does not create liability in favor of creditors not shown to have suffered loss by reliance upon it. P. 564.

281 Fed. 928, affirmed.

CERTIORARI to an order or decree of the Circuit Court of Appeals modifying an order of the District Court, which adjudged the respondents here to be partners, and sent the case to the referee for findings of fact as to insolvency. The petitioners here were the creditors.

Mr. *William Burry* and Mr. *Guy M. Peters,* with whom Mr. *Julius Moses* and Mr. *Lewis F. Jacobson* were on the briefs, for petitioners.

Mr. *George T. Buckingham,* with whom Mr. *Harry P. Weber,* Mr. *George W. Miller,* Mr. *Donald Defrees* and Mr. *Stephen E. Hurley* were on the brief, for Vette et al., respondents.

Mr. *Horace Kent Tenney,* with whom Mr. *Charles F. Harding,* Mr. *Roger Sherman,* Mr. *Carl Meyer* and Mr. *Henry Russell Platt* were on the brief, for executors of Hecht et al., respondents.

Mr. Justice BUTLER delivered the opinion of the Court.

On March 11 and 12, 1920, creditors filed petitions in bankruptcy against Marcuse & Company, and a receiver was appointed. The bankruptcy court found that the firm was composed of Marcuse, Morris, Hecht, Finn, Vette, Zuncker, Regensteiner, Clement Studebaker, Jr. and George M. Studebaker, and sent the case to the referee, directing findings of fact as to insolvency. The case was taken to the Circuit Court of Appeals on petition to review and revise that finding and order. That court eliminated from the order the names of all except Marcuse and Morris. 281 Fed. 928. This Court granted a writ of certiorari on petition of creditors. 260 U. S. 712. The question for decision is whether any of the persons named, other than Marcuse and Morris, are liable as general partners.

Marcuse had been a member, and Morris had been an employee, of the firm of Von Frantzius & Company, brokers, at Chicago, which suspended business because of the death of Von Frantzius. In April, 1917, settlement of the estate of Von Frantzius was pending in Probate Court. Proceedings in bankruptcy were pending against Von Frantzius & Company. There were many creditors of the firm, and it was indebted in large amounts to the respondents other than Vette and Zuncker. Marcuse desired to organize a new brokerage firm to carry on business in the place formerly occupied by his old firm. It was proposed that a limited partnership be formed under the Illinois Limited Partnership Act of 1874, and to that end, a form of agreement was prepared, and nine originals were signed by Marcuse, Morris, Hecht, Finn, Vette, Zuncker, Regensteiner and Hoffman (in his own name, but in fact representing the Studebaker interest).

In advance of the consummation of this agreement, Marcuse was to arrange with creditors of the firm that the assets of the Von Frantzius estate be turned over to him, as trustee, on his giving bond and making certain payments for the protection of the administrators. He was to obtain assignments of the claims of creditors, in consideration of trust certificates issued by him containing his agreement to pay off the creditors who did not accept such certificates, to organize a new partnership, to turn over the assets to the new firm for liquidation in the usual course of its business for account of the certificate holders, and, out of profits accruing to him as a member of the new firm, to pay any deficiency remaining after liquidation of the assets. This arrangement had not been completed at the time of the signing of the partnership agreement. The signed agreements were placed *in escrow* not to be delivered until conclusion of arrangements for the delivery to Marcuse of all

the assets of Von Frantzius, excepting an amount to indemnify against claims of non-assenting creditors, and to pay the expenses of administration, and until dismissal of the bankruptcy proceedings.

The proposed agreement provided for a limited copartnership under the name of Marcuse & Company, to commence business on April 2, 1917, and to continue for five years. Marcuse and Morris were to be general partners. The other signers were to be limited partners. Marcuse was to contribute a membership in the New York Stock Exchange, in addition to cash and other property. Morris was to contribute $10,000. Contributions were to be made by the limited partners as follows: Hecht $25,000, Finn $31,500, Vette $30,000, Zuncker $25,000, Regensteiner $28,500, and Hoffman (in fact the Studebaker interest) $50,000,—amounting in all to $190,-000. The general partners were to devote all their time to the business and were permitted to draw specified sums each year to be charged to expenses. Each partner, general and limited, was to have six per cent. on capital contributed by him. Morris was to have ten per cent. of the net profits. There was to be paid to Marcuse twenty-five per cent. of the net profits, to be used by him to pay off his trust certificates covering the debts of Von Frantzius & Company. The rest was to be divided among the partners, except Morris, in the proportions in which they had contributed capital.

Shortly after the deposit *in escrow*, Marcuse learned that the New York Stock Exchange would not admit to membership a firm having more than two limited partners, but would not object to a firm having only two limited partners who were not engaged in other business. This was reported to the others, and the matter of consummating the proposed partnership agreement was dropped.

. But Marcuse did not abandon the idea of organizing a new firm, and, after conferences and lapse of some time,

another limited partnership agreement for a firm of the same name was prepared conformably to the Act of 1874. Marcuse, Morris, Hecht and Finn were the parties to the new agreement. It was dated—as was the former—April 2, 1917, and was signed June 30 of that year. Marcuse and Morris were general partners and agreed to contribute capital as in the proposed former agreement. Hecht and Finn were named as limited partners, and each agreed to contribute $95,000. The liability of each was expressly limited to the amount contributed by him. The term was five years from July 1, 1917. Rights, duties and immunities of the general and limited partners were substantially as stated in the first draft.

On the same day, and as a part of the same transaction, there was signed an instrument known as the Hecht-Finn trust agreement. The limited partnership agreement was made a part of it, and a copy was attached. It recited that Hecht and Finn would be entitled to certain payments and distributions of income and assets of the copartnership, and declared that they held the same as trustees. The agreement directed payment to the Chicago Title and Trust Company of all funds at any time payable to Hecht and Finn under the partnership agreement, or by way of distribution on dissolution. It directed the trust company to distribute all funds to the holders of certain trust certificates for 380 shares of the initial value of $500 per share to be issued by Hecht and Finn, in accordance with the agreement, as follows: To Hecht 50 shares, Finn 63 shares, Vette 60 shares, Zuncker 50 shares, Regensteiner 57 shares, and Hoffman (for the Studebaker interest) 100 shares. Certificate holders were entitled to have access to the books, to have an inventory and account once a year, and a trial balance monthly. Hecht and Finn were to appoint such auditors as the holders of certificates should designate. On the report of the auditors and the direction of the certificate holders,

they were authorized to take steps to dissolve the firm, if the business was not conducted conservatively or was neglected or mismanaged. It was provided that the certificate holders should "have no right, title or interest, directory, proprietary or otherwise, in the said copartnership or in or to the property or assets of said copartnership . . . ", and that "the interest of each . . . holder of trust certificates shall consist solely of the right to receive his proportionate share of the net part or parts of the trust fund from time to time payable to the trust company hereunder; . , ." This agreement was signed by Hecht and Finn; there was attached to it an agreement signed by Marcuse, Morris, Hecht and Finn to do all things necessary to carry out the trust, and the trust company accepted the duties imposed upon it.

On the same day—June 30, 1917—Hecht delivered his check to Marcuse & Company for $25,000 and Finn his check for $31,500. And checks were delivered to Hecht and Finn by Vette for $30,000, by Zuncker for $25,000, by Regensteiner for $28,500, and by Hoffman (for the Studebaker interest) for $50,000. These checks were handed over to Marcuse & Company, making up a total of $190,000.

On Monday, July 2, the certificate of limited partnership was filed in the office of the county clerk. The new firm commenced business on that day. All the letterheads and other papers of the firm indicated that Marcuse and Morris were general partners and that Hecht and Finn were limited partners. Hecht and Finn took no part in the control of the business. Marcuse and Morris exercised exclusive control and carried on the business. The Hecht-Finn trust agreement was unknown to persons dealing with the firm. It does not appear that any of the creditors understood or had any reason to believe that the arrangement was other than as shown by the partnership agreement.

From time to time, while it was a going concern, the firm paid dividends on the capital contributed. After bankruptcy proceedings had been commenced against Marcuse & Company, Hecht and Finn, in accordance with § 11 of the Uniform Limited Partnership Act, hereafter quoted, renounced their interest in the profits of the business or other compensation by way of income. They also paid $46,000 into court for the benefit of the alleged bankrupt estate. This amount was sufficient to cover all dividends paid on the $190,000, so contributed to the capital of the business, with interest on such dividends from the times of payment.

Are Hecht and Finn liable as general partners?

No limited partnership was formed. On July 1, 1917, the Illinois Limited Partnership Act of 1874 was repealed, and there was substituted for it the Uniform Limited Partnership Act (Hurd's Revised Statutes, 1919, c. 106a, §§ 45–75). The Uniform (General) Partnership Act (*id.* §§ 1–45) became effective on the same day. The Act of 1874 provided that no limited partnership should be deemed to have been formed until the certificate should be filed in the office of the county clerk. The first effort to form a limited partnership was given up. The final effort failed because the certificate was not filed until after the repeal of the Act of 1874. Limited partnerships organized under the Act of 1917 are not authorized to do a brokerage business, and no attempt was made to organize under it.

Hecht and Finn were not partners as to Marcuse and Morris. It is well settled in Illinois that, as between the parties, the question of partnership is one of intention to be gathered from the facts and circumstances. *Goacher* v. *Bates,* 280 Ill. 372, 376; *National Surety Co.* v. *Townsend Brick Co.,* 176 Ill. 156, 161; *Grinton* v. *Strong,* 148 Ill. 587, 596; *Lycoming Insurance Co.* v. *Barringer,* 73 Ill. 230, 233, 234; *Smith* v. *Knight,* 71 Ill.

148, 150. See also *London Assurance Co.* v. *Drennen,* 116 U. S. 461, 472. The Uniform (General) Partnership Act provides: " A partnership is an association of two or more persons to carry on as co-owners a business for profit." Section 6 (1). ". . . persons who are not, partners as to each other are not partners as to third persons." Section 7 (1). ". . . common property or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property." Section 7 (2). " The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business . . ." Section 7 (4).

Hecht and Finn did not carry on the business of the firm as co-owners or otherwise. They had no authority, actual or apparent, to act for or bind the copartnership. The agreements of the parties, their subsequent conduct, the repayment of dividends received with interest, together with the other facts and circumstances above alluded to, are more than sufficient to rebut and overcome any inference legitimately resulting from the receipt of a share of the profits. The provisions of the agreement giving respondents right to have access to the books of the firm, to have statements, to appoint auditors and, in the event specified, to call for a dissolution, were appropriate in a limited partnership. See § 19, Act of 1874; § 10, Uniform Limited Partnership Act. Under the circumstances, these provisions do not indicate any intent on the part of Hecht and Finn to become general partners or support petitioners' contention that they are liable as partners.

As to third parties, they cannot be held liable as general partners.

Section 16 of the Uniform (General) Partnership Act provides that: " When a person . . . represents himself, or consents to another representing him to any one,

as a partner in an existing partnership . . . , he is liable to any such person . . . who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable . . ." There was no such representation of Hecht or Finn to any person or to the public. On the contrary, they were published to the world as limited partners. It is true that they were not. But no person could have been misled to his disadvantage by the statement that they were. Representation on mistaken belief that they were limited partners was not a holding out as general partners. The lack of power of a limited partnership created under the later act to carry on a brokerage business gives no additional significance to the representations. The firm was not held out as having been organized under that act. The failure to complete the organization did not injure any persons dealing with the firm. Creditors are as well off as if the limited partnership had been perfected. The $190,000 handed over by Hecht and Finn was not withdrawn. Hecht and Finn did not intend or agree to become general partners. The things intended and done do not constitute a partnership. They did nothing to estop them from denying liability as such. The case is not doubtful. But if it were, their intent should be followed. *Beecher* v. *Bush,* 45 Mich. 188, 193. See also *Post* v. *Kimberly,* 9 Johns. 470, 502, *et seq.* To hold them liable as general partners would give creditors what they are not entitled to have, and would impose on Hecht and Finn burdens that are not theirs to bear.

Moreover, we think that § 11 of the Uniform Limited Partnership Act was applicable and was properly invoked by Hecht and Finn. It provides:

"A person who has contributed to the capital of a business conducted by a person or partnership erroneously believing that he has become a limited partner in a limited partnership, is not, by reason of his exercise of the rights

of a limited partner, a general partner with the person or in the partnership carrying on the business, or bound by the obligations of such person or partnership; provided that on ascertaining the mistake he promptly renounces his interest in the profits of the business, or other compensation by way of income."

Prior to the taking effect of that act, the courts of Illinois held that at common law all partners were liable without limitation for the debts of the firm, and that, in order to limit such liability, the statute authorizing limited partnerships must be complied with, or all those who associated under it would be liable as general partners. *Henkel* v. *Heyman,* 91 Ill. 96, 101; *Manhattan Brass Co.* v. *Allin,* 35 Ill. App. 336, 341; *Walker* v. *Wood,* 69 Ill. App. 542, 549, affirmed 170 Ill. 463; *Cummings* v. *Hayes,* 100 Ill. App. 347, 353. And this is in harmony with decisions elsewhere under statutes similar to the Illinois Act of 1874.[1] These cases illustrate how strictly the common law rule against limitation of liability was applied, and how far the doctrine of constructive partnership was carried. It was thought that the strictness of the old act and decisions under it impaired the usefulness of limited partnerships as business organizations because of the risk that one contributing capital as a limited partner might be held liable without limitation.[2] The Uniform Limited

---

[1] *Pierce* v. *Bryant,* 5 Allen, 91, 94; *Haggerty* v. *Foster,* 103 Mass. 17; *Argall* v. *Smith,* 3 Denio, 435, affirming 6 Hill, 479, 481; *Durant* v. *Abendroth,* 69 N. Y. 148, 152; *In re Merrill,* 12 Blatchf. (U. S.) 221, 223; *Richardson* v. *Hogg,* 38 Pa. St. 153; *Vanhorn* v. *Corcoran,* 127 Pa. St. 255, 268; *In re Allen,* 41 Minn. 430; *Lineweaver* v. *Slagle,* 64 Md. 465, 483; *Holliday* v. *Union Bag and Paper Co.,* 3 Colo. 342, 344; *Oglesby Co.* v. *Lindsey,* 112 Va. 767, 776.

[2] See explanatory note as to the Uniform Limited Partnership Act, submitted with the act to the Illinois legislature.

The Uniform Limited Partnership Act has been adopted by Alaska, Illinois, Maryland, Pennsylvania, Tennessee, Virginia, Idaho, Iowa, Minnesota, New Jersey, Utah and Wisconsin. See Terry, Uniform State Laws, Annotated.

Partnership Act and the Uniform (General) Partnership Act, passed at the same time, relax the strictness of the rules against limitation of liability. Each provides that the rule that statutes in derogation of the common law are to be strictly construed shall have no application to it, and that the act shall be so interpreted and construed as to effect the general purpose to make uniform the laws of those States which adopt it. See § 28, Uniform Limited Partnership Act; § 4, Uniform (General) Partnership Act.

Hecht and Finn contributed to the capital of the business, and each erroneously believed that he had become a limited partner in a limited partnership. Neither took any part in the control of the business or exercised any rights or powers in respect of it other than those which might belong to one not a general partner. See § 19, Act of 1874; § 10, Uniform Limited Partnership Act. They made the renunciation provided for. No person suffered any loss or disadvantage because it was not made earlier, or because of reliance on any statement in the certificate. All dividends paid on the $190,000 were returned. It need not be decided whether such return was necessary.

Section 11 is broad and highly remedial. The existence of a partnership—limited or general—is not essential in order that it shall apply. The language is comprehensive and covers all cases where one has contributed to the capital of a business conducted by a partnership or person erroneously believing that he is a limited partner. It ought to be construed liberally, and with appropriate regard for the legislative purpose to relieve from the strictness of the earlier statutes and decisions. See *Logan* v. *Davis,* 233 U. S. 613, 627, 628; *United States* v. *Colorado Anthracite Co.,* 225 U. S. 219, 223; *United States* v. *Southern Pacific R. R. Co.,* 184 U. S. 49, 56. Its application should not be restricted to cases where there was an attempt to organize a limited partnership under that act.

The petitioners assert that § 11 does not apply because the limited partnership certificate filed July 2, 1917, was false in that it did not disclose the names of all the limited partners or the amount of the contributions of each. Their contention is that the other respondents were represented by Hecht and Finn, and that all should have been named in the certificate as limited partners, and that the amount advanced by each of the respondents should have been stated as his contribution to the capital. But the Act of 1874 was repealed and the Uniform Limited Partnership Act was substituted for it before the certificate was filed and before the firm commenced business. Section 8 of the Act of 1874 provides that " if any false statement shall be made in such certificate . . . all the persons interested . . . shall be liable . . . as general partners." The later act is very different. It provides (§ 6): " If the certificate contains a false statement, one who suffers loss by reliance on such statement may hold liable any party to the certificate who knew the statement to be false." We do not find that the certificate was false within the meaning of § 8. But even if it was inaccurate or false as asserted, liability of Hecht and Finn or the other respondents as general partners does not follow, because the Act of 1874 was superseded, and because it is not shown that any creditors suffered loss by reliance upon any statement in the certificate.

It must be held that Hecht and Finn are not liable as general partners.

Petitioners contend that the respondents other than Hecht and Finn are liable as general partners. They argue that in the attempt to form the limited partnership under the agreement signed June 30, Hecht and Finn were acting as the representatives of the other respondents; that the earlier agreement signed by all and placed *in escrow* was not abandoned, and that the limited partnership agreement and the Hecht-Finn trust agreement

signed June 30 were calculated and intended to circumvent the rule of the New York Stock Exchange above referred to, without altering the substance of the plan of organization evidenced by the first agreement. But from the conclusion that Hecht and Finn are not liable as general partners, it necessarily follows that the other respondents cannot be held liable as such.

The decree of the Circuit Court of Appeals is

*Affirmed.*