## CIRCUIT COURT OF BEDFORD COUNTY

I.R.E. Financial Corp.

v.

Bernard Ferer

### July 11, 1975

## By JUDGE WILLIAM W. SWEENEY

Pre-trial motions in this case were argued before this Court in Bedford on March 7 and June 16, 1975. A number of stipulations were made and exhibits introduced in an effort to avoid witnesses having to come here from New York prior to the trial. Counsel have filed letters of authorities and the case is mature for certain pre-trial rulings on preliminary motions. A firm trial date on the merits has been set for November 13, 14, 1975, at 9:30 a.m. in Bedford with a jury.

Briefly stated, the plaintiff I.R.E. Financial Corporation, a Florida corporation, seeks money damages by motion for judgment against Bedford Properties Limited Partnership and thirteen other defendants for breach of a written sales contract dated March 21, 1974, between Bedford Properties Limited Partnership, seller, and I.R.E. Financial Corporation, buyer, wherein a shopping center near the City of Bedford was to be purchased. (See Exhibit "B").

The motion for judgment recites that Bedford Properties Limited Partnership purportedly was organized and exists under the laws of New York "with defendants Bernard Ferer and Arcade Management Co., Inc., being general partners and the other defendants being limited partners" but that as a result of a failure of the partnership to file the required certificate of partnership in New

York and failure to effect publication, the limited partners are automatically elevated to the state of general partners making all of them subject to personal liability and service of process in Virginia. There is no claim that the limited partners were doing business in this state. Apparently, the sale was never fully consummated although the plaintiff alleged that it had performed all its obligations under the sales agreement.

The motion for judgment did not allege that the plaintiff ever relied on the limited partners as being general partners, that any of them had any direct connection with the shopping center or that any misrepresentations as to their interest in the partnership was ever made by any limited partners. Plaintiff does not claim detrimental reliance on the status of the partners prior to the agreement being signed. In oral argument, counsel for the plaintiff frankly stated, in response to a question from the Court, that I.R.E. could not show detrimental reliance as to the status of the individuals comprising the limited partnership.

Defendants Bernard Ferer and Arcade Management Co., Inc. are not now represented although they were properly served and filed answers. Both are general partners in Bedford Properties Limited Partnership. Robert Alexander, a limited partner has filed no answer and is unrepresented. The partnership is represented and has filed pleadings. All the other named defendants are limited partners in the partnership agreement (Exhibit "A"), are represented by various counsel, and have filed pleadings. The main issue now before the Court is whether the motions to quash service filed by the limited partners should be sustained. This will depend on whether, at the time of service under the Virginia "long arm" statute, they were limited or general partners. Based upon my analysis of the law and the argument of counsel, I rule that the defendants did not lose their status as limited partners simply because of the failure of Bernard Ferer to make the necessary partnership filings in New York. Furthermore, even if it were ruled otherwise, their subsequent renunciations filed under the terms of the Uniform Limited Partnership Act (adopted by both New York and Virginia) would protect them from suit in Virginia. The motions to quash of the limited partners are hereby sustained for the reasons stated in this opinion. Likewise, the action is dismissed as to the unrepresented defendant, Robert Alexander who,

from the evidence and argument, is in the same class with the other limited partners. Since this is a matter of jurisdiction, the Court can note and rule upon it on its own motion at any stage of the trial regardless of representation. See Virginia Code Section 8-118; *Comm. v. Hall*, 194 Va. 914, 765 S.E.2d. 208.

In *Lile's Equity Pleading and Practice*, 3d. Ed. Meade, 1952, pp. 10, 11, it is said:

> When the service of process on a defendant is invalid, because it was not legally executed, objection thereto may be made by motion, or in case of nonappearance of the defendant, the court will itself raise the objection, if observed, and no formal plea is required.

Under my rulings, therefore, the case will proceed on the merits against defendants, Bernard Ferer, Arcade Management Co., Inc. and Bedford Properties Limited Partnership. I will reserve until the trial my rulings as to summary judgment on liability as to Bernard Ferer and Arcade Management for failure to comply with plaintiff's request for admissions under Virginia Supreme Court Rule 4:11. The motion to dismiss the cross-claim of Arcade Management Co., Inc., for failure to file a certificate of authority in this state under Virginia Code Section 13.1-119 is hereby sustained.

The limited partnership was created in New York State. The partnership agreement provides that the limited partners shall not be liable in excess of capital contributed. The laws of New York require a filing of a partnership certificate in the Clerk's office and a publication. I find as a fact that neither was done. The limited partners, individuals scattered throughout New York State, apparently relied on Bernard Ferer, an attorney and the organizer of the partnership, to take the necessary legal steps. Two of the limited partners, Bronk and Morrison, obtained default money judgments and other incidental relief against Ferer and Arcade Management in a New York court in August 1974, after they had discovered certain mishandling of the partnership.

Plaintiff relies heavily on the New York case of *O'Connor* v. *Graff*, 186 App. Div. 116, 173 N.Y.S. 730 (1919), and *Oglesby* v. *Lindsey*, 112 Va. 767, 72 S.E. 672 (1911), to sustain its position that the defendants

should be treated as general partners because of the failure to file in New York. These cases are distinguishable. The *O'Connor* case was decided under a statute specifically providing that a partnership formed otherwise than in the manner prescribed for the formation of a limited partnership is a general partnership. Applying a strict construction, the court ruled on the basis of this statute. However, the statute relied on in *O'Connor* was *repealed* by the later adoption of the Uniform Limited Partnership Act in New York in 1919. Today, the same case might well be decided differently under current law. *Rowley on Partnership*, Vol. 2, Sec. 44.7 (2d ed. 1960), states:

> Section 44.7. Determining existence of partnership. ection 7(1) of the Uniform Partnership Act* by providing that, except as to partners by estoppel, persons who are not partners as to each other are not partners as to third persons has to some effect *altered the earlier cases* of some jurisdictions. This provision definitely ends any doubts which may arise through the use in many of the older cases of such limiting phrases as that a partnership was (or was not) formed "as between the immediate parties" or that "there was a partnership at least as to third persons." But generally under the Act, and apart from it, if persons are not partners *inter se*, they are not partners at all. (Emphasis added).
>      *Now embodied in New York Partnership Law, Sec. 11, Para. 1.

The Virginia case of *Oglesby* v. *Lindsey*, *supra*, was decided *prior* to the adoption of the Uniform Limited Partnership Act in this state. The decision remanded the case for further proceedings but the thrust of the opinion was that the names of general and special partners had not been conspicuously posted on the front of the business as required by statute. There is no such issue in our case. Further, a state statute then in effect specifically provided that "if publication or posting be not made, the partnership shall be deemed general," a statutory provision not now appearing in the Virginia Code. In addition, there was much discussion in the opinion

as to whether the requirements of partnership law should be strictly or liberally construed and in whose favor. That question has now been resolved in both New York and Virginia where it is provided that "the rule that statutes in derogation of the common law are to be strictly construed shall have no application to this chapter." (Va. Code 50-71). Further, the law of both states provides that "a limited partnership is formed if there has been substantial compliance in good faith with the requirements as to formation." (Va. Code 50-45). In our case, no bad faith action on the part of any limited partners is even alleged. Section 50-50, Virginia Code, provides that a limited partner shall not become liable as a general partner unless in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business. There is no allegation that any limited partner so acted in this case.

Even if it were held that the limited partners involuntarily became general partners here, they have renounced their interest in the partnership and thus protected themselves from individual liability. Section 50-54 of the Virginia Code (New York has similar statute) provides:

> A person who has contributed to the capital of a business conducted by a person or partnership erroneously believing that he has become a limited partner in a limited partnership, is not, by reason of his exercise of the rights of a limited partner, a general partner with the person or in the partnership carrying on the business, or bound by the obligations of such person or partnership; provided, that on ascertaining the mistake he promptly renounces his interest in the profits of the business, or other compensation by way of income.

Contrary to the argument made by plaintiff's counsel, this statute does not require notice to creditors. By the very act of renunciation the limited partner surrenders to creditors his interest in the partnership thus benefiting the creditor and giving creditors priority over any personal claims of the partner. For a case similar to ours on the facts in which renunciation was held to protect

a limited partner, see *Gilman Paint & Varnish Co.* v. *Legum*, 197 Md. 665, 80 A.2d 906 (1951).

The United States Supreme Court case of *Giles* v. *Vette*, 263 U.S. 553, 44 S. Ct. 157 (1924), is important because of its closeness on facts and because the current law of New York as to limited partnerships is substantially the same as the Illinois laws construed in *Vette*. In holding that certain parties were shielded as general partners, the case of *Giles* v. *Vette*, 263 U.S. 553, 44 S. Ct. 157 (1924), stressed the intention of the partners as gathered from the facts and circumstances; the fact that no limited partner ever held himself out to be a general partner; and the fact that no creditor had been misled to his detriment in dealing with the limited partnership. The Court said:

> But no person could have been misled to his disadvantage by the statement that they were [limited partners]. Representation on mistaken belief that they were limited partners was not a holding out as general partners. . . . To hold them liable as general partners would give creditors what they were not entitled to have, and would impose on X and Y burdens that are not their's to bear.

Counsel for the plaintiff in his reply memorandum attempts to distinguish *Giles* v. *Vette* on the grounds that the partnership certificate in *Vette* was filed and recorded. This is true. But, in deciding that the limited partners would not be held liable as general partners, the Supreme Court rested its decision on the intention of the parties and the lack of detrimental reliance of the plaintiff on the status of the partnership and not on the fact that the partnership certificate was filed. In the *Giles* case the Court shielded from personal liability as general partners persons who erroneously believed that the brokerage firm had been created as a limited partnership. I agree with this theory and apply it in the case at bar.

The legislative intent behind the adoption of the Uniform Limited Partnership Act is important. Section 11 of the Uniform Limited Partnership Act, which is presently contained verbatim as Section 50-54 of the 1950 Code of Virginia as well as in Article 8 of New York's

state statutes, was designed to absolve persons of liability as general partners in circumstances identical to those in the case at bar.

Quoting from Justice Robinson's opinion in *Rathke v. Griffith*, 36 Wash. 2d 394, 218 P.2d 757, 759 (concerning the failure of a limited partnership to comply with a statute requiring certificate publication after filing), the court said:

> Mr. William Lewis, the draftsman of the new act [Uniform Limited Partnership Act], has written of it as follows: "Practically all the differences between the new Uniform Act and the existing statutes are due to the desire of the Conference to present to the legislature of the several states an act, under which a person willing to invest his money in a business for a share of the profits, may become a limited partner, with the same sense of security from any possibility of unlimited liability as the subscribers to the shares of a corporation." William D. Lewis, The Uniform Limited Partnership Act, 65 U. Pa. L. Rev. 715, 723.
>
> Representative of these remedial changes is Section 11 of the act upon which appellants rely. Illustrating the type of situation which Section 11 was intended to meet, Mr. Lewis says: "*Again, suppose a person is asked to contribute to the capital of a business conducted by a person or partnership, and that he does so, believing he has become a limited partner, but the certificate required to be filed, is not filed*, or being filed is so defective that no limited partnership has been formed. Under existing acts a person in the position described runs a danger of becoming a general partner, if he takes a share in the profits, and still a greater danger if he exercises a limited partner's right to look over the books and give advice to his supposed co-partners. It is immaterial that he may have thought all things had been done necessary for the formation of the limited partnership, and also that persons doing business with the partnership may at the time they extended credit believe

he was a limited partner." § 11 [Va. Code Section 50-54] of the Uniform Act meets this situation. (Emphasis added).

In *Tracey* v. *Tuffly*, 134 U.S. 206, 10 S. Ct. 527, (1890), the United States Supreme Court construed partnership statutes similar to those existing in Virginia and New York prior to the adoption of the more liberal Uniform Limited Partnership Act. Even under the strict interpretation before the adoption of the new acts, the Court recognized that creditors of a partnership had no basis for relief unless they relied to their detriment on the faulty formation of the partnership. The Court said:

> If attacking creditors recognize and deal with a firm as a limited partnership, then they will be estopped from insisting that there was no such partnership, or that the terms of the partnership were not sufficiently stated in the notice of its formation.

Counsel for the limited partners will prepare orders in accordance with this opinion.