39 N.J. Super. 467 (1956)
121 A.2d 441
WEST SIDE TRUST COMPANY, A TRUST COMPANY OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ARTHUR O. GASCOIGNE AND SYDNEY JACKSON, PARTNERS TRADING AS JACKSON CONTRACTORS, DEFENDANTS, AND SYDNEY JACKSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 5, 1956.
Decided March 16, 1956.
*469 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Walter J. Bilder argued the cause for the respondent (Messrs. Bilder, Bilder & Kaufman, attorneys).
Mr. Joseph L. Freiman argued the cause for the appellant.
The opinion of the court was delivered by FRANCIS, J.A.D.
Plaintiff bank sought judgments on three promissory notes, alleged to represent obligations of the defendants Arthur O. Gascoigne and Sydney Jackson, trading as partners under the name Jackson Contractors. The complaint is in three counts, each on a separate note. The first bears the date July 24, 1952; the second, December 3, 1952, and the third, March 6, 1953. They are signed "Jackson Contractors, Arthur O. Gascoigne." The appendix does not disclose any answer filed by Gascoigne. Jackson answered, denying the existence of a partnership at the times in question and asserting that the notes represented personal obligations of Gascoigne. On motion, summary judgment was entered against Jackson on the second and third counts; the first count was held for trial because the trial court concluded that a disputed factual issue existed as to that note. West Side Trust Co. v. Gascoigne, 37 N.J. Super. 588 (Law Div. 1955). This appeal followed.
At the outset a procedural bar presents itself. A judgment is final so as to be reviewable only when it disposes of the litigation as to all issues and all parties. Here only two of the three causes of action were adjudicated; the judgment is interlocutory in character and not appealable as of right. R.R. 2:2-1; Petersen v. Falzarano, 6 N.J. 447, 452 (1951); Thatcher v. Jerry O'Mahony, 37 N.J. Super. 139, 142 (App. Div. 1955); Vollbehr v. Ingram, 22 N.J. Super. 249, 252 (App. Div. 1952). Moreover, no effort was made to cloak it with the quality of finality under R.R. 4:55-2; Thatcher v. Jerry O'Mahony, supra, 32 N.J. Super., *470 at page 142; Bartzak v. John W. McGrath Corp., 23 N.J. Super. 301 (App. Div. 1952); Eisenberg v. Trad Television Corp., 22 N.J. Super. 332 (App. Div. 1952).
It is to be regretted that the flow of unauthorized appeals continues despite reminders of the practice requirements. In re Opper's Estate, 29 N.J. Super. 520, 527 (App. Div. 1954); Sagarese v. Board of Health, Morristown, 27 N.J. Super. 400, 402 (App. Div. 1953); 9 Rutgers L. Rev. 319. Attention is called to the thoroughly informative discussion of the subject of appeals from interlocutory orders by Justice Jacobs in Appeal of Pennsylvania Railroad Co., 20 N.J. 398 (1956). Study of the opinion will bring about an understanding of the philosophy on which the final judgment requirement rests. Further, it will serve to create an awareness of the broad power of this Division to grant leave to appeal from intermediate orders or judgments when the grounds therefor are "substantial"  where the rights involved are "too important to be denied review." Id., at page 409; R.R. 2:2-3(b).
The parties have argued the merits of the controversy without reference to or discussion of the procedural problem. The summary judgment is one which the trial court might have treated as final under R.R. 4:55-2 if request to do so had been made. The argument on the merits persuaded us that the questioned summary disposition was not warranted. Consequently, the spirit of the rules has impelled us to decide the matter now and thus avoid a renewal of the appeal which would probably come after final judgment, if we dismissed this one as premature.
Summary judgment is proper only where the record shows palpably that there is no genuine issue as to any material fact in the case. R.R. 4:58-3. The papers supporting the motion are required to be closely scrutinized; those opposed to it indulgently treated. Doubts must be resolved in favor of the conventional trial. The matter cannot be decided on the affidavits of the parties where inferences for and against the existence of the cause of action or the defense arise therefrom, no matter how strongly they point in one *471 direction or the other. Affidavits are of value only when they demonstrate palpably the absence of a factual dispute as to elements of the cause of action or defense. Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 76 (1954); Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 155 (Ch. Div. 1951), affirmed 9 N.J. 605 (1952).
Turning to the facts, it appears that Jackson and Gascoigne were partners trading as Jackson Contractors from 1946 until September 1, 1949. The partnership was dissolved and on the latter date Gascoigne filed a certificate in the Essex County Clerk's Office under N.J.S.A. 56:1-1, 2, establishing that thereafter he alone was doing business under the trade name "Jackson Contractors."
In June 1952 Gascoigne sought a loan from the plaintiff bank. He claims to have advised the vice-president with whom he dealt that he was operating Jackson Contractors himself. The bank official's recollection (according to a deposition) was that Gascoigne said he and Jackson were partners.
In any event, on June 23 this vice-president had Gascoigne fill out and sign an elaborate financial statement for Jackson Contractors. A portion of this statement is as follows:
"Partnership. (State whether partnership operates under written Articles of Copartnership or verbal agreement): Verbal

 Date of Partnership Agreement: 1940
 Date of expiration: none

Listed below are all the General and Special Partners of this firm:

 Amount of
 Name Capital Contributed
 General Partners: * * *
 Arthur O. Gascoigne [unanswered]
 Special Partners:
 Sydney Jackson [unanswered]

Extent to which Special partners are responsible for debts of this partnership and to what date: [unanswered]

* * * * * * * *
 Signatures (Firm and partners)
 Jackson Contractors
 Arthur O. Gascoigne
 All Partners Should Sign
 When There Is No Written Partnership Agreement"
 (Insertion "unanswered" is ours.)
*472 Manifestly this statement is not only incomplete but lacks vital information as to the nature of the partnership. However, no inquiry was ever made of Gascoigne by any agent of the bank at any time as to the particulars of Jackson's association with the alleged firm; nor was he ever asked to obtain Jackson's signature to the statement. It is undisputed also that no one ever communicated with Jackson in connection with his alleged interest in the firm when the notes in question were executed.
On July 24, 1952, a month after the financial statement was supplied, the bank loaned money on the note signed "Jackson Contractors, Arthur O. Gascoigne" which is the subject of the first count of the complaint.
Gascoigne signed a certificate of dissolution of Jackson Contractors on July 29, 1952, and filed it in the county clerk's office on August 1. According to Jackson's affidavit, on or about August 1, through a subterfuge, Gascoigne obtained his signature to an account card of the bank and on a trade name certificate as a partner of Jackson Contractors. He was told that this was necessary in order to collect an old debt due the firm when he was a member prior to September 1, 1949. The new certificate was filed by Gascoigne on August 1, 1952; a copy and the firm account card were given to the bank.
Thereafter two additional loans were granted, one on December 4, 1952 and the other on March 6, 1953. These notes were signed in the same manner as the first one. No further financial statement was requested in connection with the transactions. It is undisputed that Jackson was not aware of the loans. And there is no proof that he received any of the proceeds.
The trial court regarded the filing on August 1, 1952 of the trade name certificate signed by Jackson and Gascoigne as dispositive of the claim on the second and third counts of the complaint. He took the view that under N.J.S.A. 42:1-16 this certificate established a statutory estoppel against any denial by Jackson of the existence of a partnership *473 after the filing date thereof, so far as the notes of December 3, 1952 and March 6, 1953 are concerned.
With respect to the note of July 24, 1952, a factual issue as to the existence of a partnership was found to arise, presumably from the financial statement and the proof that the trade name certificate then on record showed Gascoigne as the sole operator of Jackson Contractors. No review of this holding is sought.
N.J.S.A. 42:1-16 (Uniform Partnership Law, 7 U.L.A., § 16, at 94) provides:
"1. When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to anyone, as a partner in an existing partnership * * *, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made. (Emphasis ours.)

* * * * * * * *
b. When no partnership liability results, he is liable jointly with the other persons, if any, so consenting to the contract or representation as to incur liability, otherwise separately."
Clearly the filing of the business name certificate under N.J.S.A. 56:1-1 constituted a representation of partnership "in a public manner." But section 16 of the act quoted does not create a conclusive estoppel in every situation and under all circumstances. If the person who extends credit knows, in spite of the representation, that there is in fact no partnership, or if he is made aware of facts which call for inquiry as to the verity of the representation and he fails to make a reasonably diligent investigation, the bar of the statute ought not to be applied. Hempstead v. Allen, 126 Mont. 578, 255 P.2d 342 (Sup. Ct. 1953); C.E. Johnson & Co. v. Marsh, 111 Vt. 266, 15 A.2d 577 (Sup. Ct. 1940); Central Nat. Bank & Trust Co. v. Redman Freight Lines, 229 Iowa 661, 294 N.W. 915 (Sup. Ct. 1940); Anfenson v. *474 Banks, 180 Iowa 1066, 163 N.W. 608, 620, L.R.A. 1918D, 482 (Sup. Ct. 1917); Merchants' Nat. Bank v. Wehrmann, 69 Ohio St. 160, 68 N.E. 1004, 1007 (Sup. Ct. 1903), reversed on other grounds 202 U.S. 295, 26 S.Ct. 613, 50 L.Ed. 1036 (1906); Morgan v. Farrel, 58 Conn. 413, 20 A. 614 (Sup. Ct. Err. 1890); 40 Am. Jur., Partnership, § 77; Gilmore, Partnership, § 21, at 67 (1911).
Was there a duty on the bank here to inquire into Jackson's relationship with Gascoigne? The trial court's opinion advances the view that the duly executed and filed trade name certificate conclusively negatived such obligation. We cannot agree.
On July 23, somewhat over five months prior to one of the notes in dispute and eight months prior to the other, the bank had notice, in response to a specific question on the subject, that Jackson was a "special" partner and that the partnership agreement was a verbal one. Yet it ignored the requirement on its own form for a statement of the extent to which the special partner was responsible for partnership debts and for the signatures of all partners. No information was sought even from Gascoigne as to the nature of Jackson's interest.
Insistence on Jackson's signature would have revealed the true state of affairs. A telephone call or a letter would have produced his disclaimer or a consent to the transactions. The disregard of plaintiff's own rule for signatures of all partners cannot be ignored.
In our judgment the facts brought to the attention of the plaintiff called for reasonable inquiry as to Jackson's association with Gascoigne, and the burden of doing so was not removed as a matter of law because of the subsequent signing by Jackson at Gascoigne's behest of the bank account card of Jackson Contractors or the trade name certificate.
In the parlance of an ordinary man, a "special" partner connotes an unusual, not a regular, partner. A "limited" partner under the Uniform Limited Partnership Act is commonly spoken of as a "special" one. See Commissioners Notes to § 1 (8 U.L.A. 3); 40 Am. Jur., Partnership, §§ 505, 511. And it has been declared that a representation of limited *475 partnership is not one of general partnership. Giles v. Vette, 263 U.S. 553, 561, 44 S.Ct. 157, 68 L.Ed. 441 (1924).
Plaintiff suggests that the financial statement is of no consequence because the defense is not that a special partnership existed but rather that no association was in being at all. But this suggestion overlooks the fact that the materiality and relevancy stem from the tendency of the portions mentioned to excite inquiry as to Jackson's status.
Suppose the signature card and the trade name certificate had been supplied at the same time as the financial statement. Could it be said that the mention of Jackson's position as a special partner was fully and completely explained thereby? Moreover, it is a fair inference that new or additional financial statements were not demanded, when each of the last two loans was negotiated and the notes executed, because of continued reliance on the one already in plaintiff's possession.
Under the circumstances, we feel that it is for the jury to say whether the duty to make reasonable inquiry was eliminated by the presentation of the signature card and trade name certificate.
The judgment is reversed and the matter is remanded for trial.