98 N.J. Super. 335 (1967)
237 A.2d 303
REISEN LUMBER & MILLWORK CO., A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
ANGELO SIMONELLI AND ALLEN MILLINGER, INDIVIDUALLY AND AS CO-PARTNERS TRADING AS THE YORKE INVESTMENT COMPANY, AND JOVINA SIMONELLI, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 22, 1967.
*336 Mr. Sydney M. Dornbusch for plaintiff.
Mr. Harvey L. Weiss for defendant Allen Millinger (Mr. Morris J. Stern, attorney).
LARNER, J.S.C.
Plaintiff is engaged in the business of selling lumber and related products. On or about September 16, 1966 an account was opened with plaintiff by defendant Angelo Simonelli, in his name and in the trade name of Yorke Investment Company. Plaintiff's books designated the account as follows: "Angelo Simonelli and Yorke Investment Co." Thereafter, between September 16, 1966 and May 22, *337 1967, plaintiff delivered materials on order of Simonelli upon which there is a claimed balance due of $5,197.46. Plaintiff has recovered a default judgment against Simonelli and now seeks a summary judgment against the defendant Allen Millinger, contending that it is entitled to judgment as a matter of law regardless of the factual allegations contained in the affidavits submitted by Millinger in opposition to the motion.
The basis of plaintiff's position is that (a) on June 5, 1963 Simonelli and Millinger filed a business name certificate with the Essex County Clerk pursuant to the provisions of N.J.S.A. 56:1-1 et seq., which represented over their signatures that the owners of the business conducted under the trade name "Yorke Investment Company" are Angelo Simonelli and Allen Millinger, and (b) as of the time of the sale and delivery of the materials involved, a certificate of dissolution of the partnership of Yorke Investment Company had not been filed pursuant to the provisions of N.J.S.A. 56:1-6 and 7. It is therefore plaintiff's contention that the partnership existed and continued by virtue of the aforesaid filing, and that defendant Millinger is estopped from denying the existence of the partnership and is liable for the debts of said partnership incurred under the name of Yorke Investment Company. It asserts that this conclusion results from the provisions of the Uniform Partnership Law and particularly paragraph 1 of N.J.S.A. 42:1-16.
The affidavits submitted by defendant establish, for the purpose of this motion, that Simonelli and Millinger had entered into a partnership some time prior to November 1964 to purchase real estate and assumed the trade name of Yorke Investment Company. The partnership did engage in the purchase of real estate but not in the construction business. In any event, in November 1964 the two defendants dissolved the partnership in fact and no longer conducted any business together after that date.
Simonelli, however, continued to do business alone under the name of Yorke Investment Company, while Millinger had *338 no authority to sign checks thereafter and had no financial interest whatever in Simonelli's business activity.
In 1966 Simonelli was engaged in the construction of a building on land located at 383 Clifton Avenue, Newark, New Jersey owned by his wife and himself. He personally established the account with plaintiff and ordered the materials involved for delivery to the construction job at 383 Clifton Avenue.
Contrary to plaintiff's allegations, Simonelli states in his affidavit that he made no mention of Millinger to plaintiff and never represented that Millinger was a partner or was in any way connected with Yorke Investment Company. He points out that credit was extended to him alone and that plaintiff made no inquiry of him as to the make-up of Yorke Investment Company. He assigned as a reason for the use of the partnership name in his transactions with plaintiff the fact that he had maintained an active checking account in that name and desired to continue using it for payment of materials on the construction project.
Plaintiff admits that it did not examine or cause to be examined the county clerk's records as to Yorke Investment Company before extending the credit between September 1966 and May 1967, and therefore concedes that it did not rely upon the filing of the partnership name certificate or the absence of a certificate of dissolution during that period. It is evident that the status of the Essex County Clerk's records in this regard was not discovered by the plaintiff until suit was about to be instituted.
It should also be noted that plaintiff had not extended credit to Simonelli or the partnership prior to the dissolution in fact in November 1964, and that the transaction with Simonelli took place long after the partnership was dissolved.
In the light of the factual data submitted by defendant, the court cannot grant plaintiff's motion for summary judgment unless the mere recording of the partnership name without the filing of a formal dissolution certificate imposes liability *339 on one of the named partners to a creditor who extended credit to the other partner after the partnership was in fact dissolved. Under the Uniform Partnership Law, a partnership is dissolved upon a "change in the relation of the partners caused by any partner ceasing to be associated in the carrying on * * * of the business," N.J.S.A. 42:1-29, although the partnership continues until the winding up process is completed, N.J.S.A. 42:1-30. It is therefore evident that the dissolution operates to affect future transactions and to terminate the authority of one partner to act for the other or to bind the partnership, except for certain specific inapposite instances. N.J.S.A. 42:1-33 and 35; Scaglione v. St. Paul-Mercury Indemnity Co., 28 N.J. 88, 102 (1958).
Since, for the purpose of this motion, the court must assume as a fact that the partnership of Yorke Investment Company was dissolved and terminated as far as plaintiff was concerned in view of its status as a new creditor in 1966, the only potential of liability of defendant Millinger must rest upon a theory of partnership by estoppel within the intent and meaning of N.J.S.A. 42:1-16. The pertinent portion of the section provides:
"When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made."
Plaintiff particularly relies upon the following clause:
"[A]nd if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person *340 so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made."
It is urged that the unrevoked filing of the business name certificate constitutes a representation of the existence of a partnership "in a public manner," and that the statute imposes liability under such circumstances on the theory of partnership by estoppel without the necessity of reliance by the creditor. In support thereof plaintiff cites the opinion of our former Supreme Court in Kotwica v. Daneski, 1 N.J. Misc. 140 (Sup. Ct. 1923) which appears to hold under the particular facts therein that a partnership existed as a matter of law as a result of the presumptive evidence derived from the filing of the partnership name certificate. However, this opinion is of little assistance in the determination of the present problem since it does not deal with the issue of actual reliance or nonreliance upon the public record and reflects evidence that the defendant continued to act as a partner even after the other partner abandoned the partnership business and went to Europe.
It is settled that the filing of the business name certificate constitutes a representation of the partnership "in a public manner" within the purview of the foregoing statute. West Side Trust Co. v. Gascoigne, 39 N.J. Super. 467 (App. Div. 1956). However, a careful analysis of the statutory language dictates the conclusion that the representation in a public manner does not obviate the necessity of reliance on that representation by the creditor in order to impose liability through the avenue of partnership by estoppel.
The legislative intention of the pertinent paragraph of N.J.S.A. 42:1-16 may be paraphrased as follows: An individual is liable as a partner when he represents himself as such or consents to another representing himself as such to a creditor even though he is not in fact a partner, where the creditor has extended credit to the partnership in reliance upon that representation. In addition, he is liable where he has made such representation in a public manner whether or *341 not the representation has been communicated to the creditor with his knowledge or consent. In other words, if the representation is made in a public manner rather than directly to the creditor, the plaintiff need not prove that the communication of the representation was made or communicated to him by or with the consent of the apparent partner. The public nature of the representation of a partnership eliminates the requirement that defendant participated directly or indirectly in communicating the representation to the creditor. It does not, however, eliminate the basic necessity of knowledge of the representation by the creditor as a foundation of the essential element.
If plaintiff's asserted construction were correct, to the effect that public dissemination of the existence of the partnership eliminated the necessary element of reliance, why would the Legislature have added the phrase "by or with the knowledge of the apparent partner making the representation or consenting to its being made" after the word "credit"? If the clause had terminated at the word "credit," there might be some substance to the interpretation advanced by plaintiff. However, to apply the interpretation advanced by plaintiff would render that clause superfluous and meaningless. And it is a well recognized rule that "a construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided." Hoffman v. Hock, 8 N.J. 397, 406 (1952); Abbotts Dairies Inc. v. Armstrong, 14 N.J. 319, 327 (1954).
If the additional clause is to be considered significant, it is apparent that it points up the intent and meaning of the preceding language and demonstrates that the differentiation between private and public representation lies only in the respective presence or absence of the requirement that the apparent partner knew of or consented to the communication of the representation to the creditor.
Another clue of interpretation is presented in the analysis of this statute in National Premium Budget Plan Corp. v. National Fire Insurance Co., 97 N.J. Super. 149, 231 (Law *342 Div. 1967) where the court points out that the reference in the statute to "such person so giving credit" signifies a person who gave credit "on the faith of such representation."
In West Side Trust Co. v. Gascoigne, 37 N.J. Super. 588 (Law Div. 1955), the trial court granted a summary judgment to the creditor on the theory that the filing of the business name certificate constituted a representation in a public manner and established the existence of a partnership as a matter of law, as a result of which a creditor who extended credit thereafter was entitled to recovery against the apparent partner regardless of extrinsic facts pertaining to reliance or inquiry. The Appellate Division, however, reversed this judgment in 39 N.J. Super. 467 (App. Div. 1956), holding that a fact question existed for jury determination in view of the unusual set of circumstances pointing to lack of reliance and lack of inquiry by the creditor. In discussing N.J.S.A. 42:1-16 the court pointed out:
"But section 16 of the act quoted does not create a conclusive estoppel in every situation and under all circumstances. If the person who extends credit knows, in spite of the representation, that there is in fact no partnership, or if he is made aware of facts which call for inquiry as to the verity of the representation and he fails to make a reasonably diligent investigation, the bar of the statute ought not to be applied." (at p. 473)
Although there are no appellate precedents in New Jersey which deal with the particular issue whether the creditor must demonstrate reliance upon the public record of the partnership in order to recover from the apparent partner, it is my firm opinion that reliance is a necessary prerequisite for recovery. It would indeed be illogical to assume that the Legislature intended that reliance upon the representation is essential where that representation is made directly to the creditor but not essential where the representation occurs through public filing.
The entire concept of N.J.S.A. 42:1-16 is based upon the equitable doctrine of estoppel, since it imposes partnership *343 liability where none exists in fact because of equitable principles which dictate that the apparent partner should be estopped from denying its existence. In this connection it is revealing that in the rules of construction of the Uniform Partnership Law, N.J.S.A. 42:1-4, there is contained the provision, "The law of estoppel shall apply under this chapter."
It is manifest that one of the necessary elements of proof required of the party seeking to invoke the doctrine of estoppel is that he in good faith relied upon the conduct, act or representation of the other party. Feldman v. Urban Commercial, Inc., 70 N.J. Super. 463, 474 (App. Div. 1961); Clark v. Judge, 84 N.J. Super. 35, 54 (App. Div. 1964) affirmed 44 N.J. 550 (1965); Brower v. Glen Wild Lake Co., 86 N.J. Super. 341, 348 (App. Div. 1965) certification denied 44 N.J. 399 (1965); 3 Pomeroy's Equity Jurisprudence (5th ed. 1941) § 812, p. 230.
Since it is conceded by plaintiff that it did not examine or know of the filing of the business name certificate when it extended the credit and shipped the materials, it is clear that it did not rely upon the status of the county clerk's record in any respect. Under such circumstances, it cannot utilize the theory of partnership by estoppel to impose liability upon one who was not a partner and who was a stranger to it at the time when the obligation was incurred.
In view of the foregoing, the motion for summary judgment must be denied.