462 P.2d 413

**GRAYBAR ELECTRIC COMPANY, Inc., a New York corporation, Appellant,**

v.

**Fred C. LOWE and Mae A. Lowe, his wife, Appellees.**

**No. 1 CA–CIV 865.**

Court of Appeals of Arizona.

Division 1, Department A.

Dec. 15, 1969.

Boutell, Fannin & Ridge, by William T. Boutell, Jr., Phoenix, for appellant.

Rawlins, Ellis, Burrus & Kiewit, by Chester J. Peterson, Phoenix, for appellees.

CAMERON, Judge.

This is an appeal by the plaintiff, Graybar Electric Company, Inc., from a judgment by the court sitting without a jury in favor of the defendants, Fred and Mae Lowe, and from the order denying plaintiff's motion for new trial.

We are called upon to determine:

1. whether the defendants complied with A.R.S. § 29-311 in renouncing their interest in the partnership, and

2. whether they thereby escaped liability for the partnership debts.

The facts necessary for a determination of the matter on appeal are as follows. A certificate of formation of limited partnership was signed 30 November 1961 and filed of record in the Maricopa County Recorders Office 22 December 1961 pursuant to §§ 29-102 and 29-302 A.R.S. The certificate designated the limited partner as Fred C. Lowe and the general partners as William W. Preston and Joseph Blomquist. The firm name was Blomquist Electric Company. By September 1963 the general partner, Preston, had withdrawn from the partnership. On 3 September 1963 the following was filed of record in the office of the Maricopa County Recorder:

"CERTIFICATE OF PARTNERSHIP

"KNOW ALL MEN BY THESE PRESENTS:

"That we, JOSEPH C. BLOMQUIST and FRED C. LOWE, hereby certify that we have formed a partnership, under the firm name and style of BLOMQUIST ELECTRIC, for the purpose of conducting, operating and carrying on a general business as electrical contractors.

"Said establishment and business is situated at 3215 North Fifty-Third Drive, Phoenix 31, Arizona, and at such other places as we may hereafter agree upon; that both of the undersigned are residents of the County of Maricopa, State of Arizona, and that the undersigned are the only members of said partnership.

"WITNESS our hands and seals this 30 day of August, 1963.

/s/ _____
JOSEPH C. BLOMQUIST
/s/ _____
FRED C. LOWE"

Defendant Lowe testified regarding this document:

"Q  There has been marked in evidence, Mr. Lowe, a certificate of the partnership, so-called, dated the 30th day of August, 1963, in which your name apparently occurs. Will you tell us why that particular document was made?

"A  Well, previous to this time, about a week, Joe came to me one day. There was somebody—I don't even know who—who owed him $500.00, and he wanted to know if he could put it in for collecting or what he should do. I told him, well, if he gave it to a lawyer or a collection agency, and about a week later I got a telephone call that Joe, Mr. Blomquist, was going to come out to my place to sign a paper to give to the particular lawyer to give him

the right to sue or whatever. I mean, it was similar to this in substance, and Joe came in with this paper one morning and I was on the telephone. He handed it to me and told me this is the paper to sign. I glanced at it, signed the paper, and I didn't know really what it was. I thought it was a right to sue or whatever it was.

"Q Did you intend to become a general partner, Mr. Lowe, on that with Mr. Blomquist?

"A No, sir.

"Q Did you change your method of dealing with Mr. Blomquist after that?

"A No, I didn't. I didn't know that— I thought he was going to sue as far as this paper and everything was the same.

"Q Mr. Blomquist continued to operate the business on his own?

"A Oh, yes. I only saw him once or twice a month.

"Q Did you ever come to take over any management of the business after that was signed?

"A No."

Up to this point the facts in this case are almost identical with those in Lowe v. Arizona Power & Light Co., 5 Ariz.App. 385, 427 P.2d 366 (1967). In that case we held that even though a valid limited partnership had been created in 1963 the defendant Lowe was liable as a general partner for the partnership debts incurred after 3 September 1963, the date of the recording of the certificate of partnership mistakenly signed by Lowe.

In the instant case we are concerned with new and additional facts not previously litigated in Lowe v. Arizona Power, supra. First, from about 18 February 1964 to 24 June 1965, plaintiff Graybar extended credit to Blomquist Electric on open account. Plaintiff was not aware that Lowe was anything more than a limited partner and was not aware of the recorded "certificate of partnership" of September 1963. Second, Lowe, by letter personally delivered to plaintiff on or about 15 April 1965, renounced any interest in the Blomquist Electric Company pursuant to A.R.S. § 29–311.

Suit was brought by plaintiff in March of 1966 alleging that the sum of $4,322.09 was due and owing. Defendant answered denying the general partnership, asserting a limited partnership and denying liability by reason of the fact that he had complied with A.R.S. § 29–311 by promptly, upon knowledge of his possibly being held to be a general partner, renouncing all interest in the partnership.

## DID THE LETTER COMPLY WITH THE STATUTE?

A.R.S. § 29–311 reads as follows:

"§ 29–311. Status of person erroneously believing himself a limited partner

"A person who has contributed to the capital of a business conducted by a person or partnership erroneously believing that he has become a limited partner in a limited partnership, is not, by reason of his exercise of the rights of a limited partner, a general partner with the person or in the partnership carrying on the business, or bound by the obligations of such person or partnership; provided that on ascertaining the mistake he promptly renounces his interest in the profits of the business, or other compensation by way of income."

The Uniform Limited Partnership Act, adopted by the Arizona legislature, A.R.S. § 29–301, et seq., does not state the method of renunciation or the form the renunciation must take. We believe that logic demands that the limited partner must intend to renounce or give up any and all "interest in the profits of the business, or other compensation by way of income." By doing this he is then free from liability as a general partner for the partnership debts. In addition, the limited partner must give notice of this decision.

Logic might indicate that a general partnership that has been created as here by recording in the office of the County Recorder should be revoked in like manner. The Uniform General Partnership Act, also adopted by the Arizona legislature, A.R.S. § 29–201 et seq., however, provides as follows:

"§ 29–206.  Partnership defined

\*      \*      \*      \*      \*      \*

"B.  \* \* \* *this chapter shall apply to limited partnerships except insofar as the statutes relating to such partnerships are inconsistent herewith.*"  (emphasis ours)

And:

"§ 29–203.  Interpretation of knowledge and notice

\*      \*      \*      \*      \*      \*

"B.  A person has 'notice' of a fact within the meaning of this chapter when the person who claims the benefit of the notice:

"1.  States the fact to such person, or

"2.  Delivers through the mail, or by other means of communication, a written statement of the fact to such person or to a proper person at his place of business or residence."

We hold that written notice of renunciation to the creditor is sufficient as to that creditor.  Whether the contents of defendant's letter of 15 April 1965 satisfied the requisites of A.R.S. § 29–311 cannot be determined by this Court because the letter, Exhibit 6 in the trial below, was not designated by the appellant as part of the record on appeal and is not before this Court. Since it is not part of the record we must assume that the trial court found that it did constitute a valid notice of renouncement of defendant's interest in the partnership in reaching the conclusions it reached and we will not disturb that finding on appeal.  Campbell v. Campbell, 9 Ariz.App. 557, 454 P.2d 875 (1969), Orlando v. Northcutt, 103 Ariz. 298, 441 P.2d 58 (1968), Bryant v. Thunderbird Academy, 103 Ariz. 247, 439 P.2d 818 (1968).

## IS THE NOTICE RETROACTIVE?

At the trial the following testimony was given by Eldor Droegemueller, Branch Financial Manager of plaintiff Graybar:

"Q  When did you learn that he might have any interest at all in Blomquist Electric Company?  When was the first time?

"A  At the time I established the account in 1961.

"Q  And at that time you learned that he was a limited partner, didn't you?

"A  At that time, yes, sir.

"Q  And that was the basis upon which you established the account?

"A  That was not the basis.  It was on the overall credit report.

"Q  But I mean you established it with the idea in mind that he was a limited partner?

"A  I was aware that he was a limited partner at that time, yes, sir.

"Q  When did you ever learn anything contrary to that?

"A  I would guess in 1966.

"Q  That was after the full amount of this bill had been run up?

"A  Yes."

The letter of renouncement was delivered 15 April 1965 and there is nothing in the record before us to indicate that prior to that time the plaintiff relied upon the fact that the defendant was anything other than a limited partner.

There is no question that Lowe would not be liable for partnership debts incurred after the notice.  The question before this Court is whether the renouncement may relate back.  Under these circumstances, we believe that the renunciation may relate back to the debts incurred by the partnership prior to the renouncement by the defendant Lowe.  Our Supreme Court has stated regarding liability of a general partner:

"The intent of the contracting parties to form a partnership is always an es-

sential element of a partnership relation *as between the parties themselves,* but as to third parties, the relation will be determined from the facts rather than the conclusions of the co-partners as to the nature of their business relationship. * * *." Mercer v. Vinson, 85 Ariz. 280, 287, 336 P.2d 854, 859 (1959).

We have held this is an issue of fact for the trial court. Kitchell Corporation v. Hermansen, 8 Ariz.App. 424, 446 P.2d 934 (1968).

The federal courts have stated what we believe to be the general rule:

"Accordingly, the District Court, as had the Secretary before him, upheld the application here of the doctrine of partnership by estoppel, relying on the Illinois Uniform Partnership Act (Ch. 106½, I.R.S. § 16) which provides that one who negligently holds himself out or permits himself to be held out as a member of a partnership is estopped to deny such partnership relation as against third persons who in good faith relied on the existence of such apparent partnership and extended credit thereon. (citations omitted)." Branscome v. Schoneweis, 361 F.2d 717, 722 (7 Cir. 1966).

There must be a reliance upon this "holding out", however, before the defendant can be held liable as a general partner. In a 1967 New Jersey case the court, in a similar fact situation, stated:

"It is manifest that one of the necessary elements of proof required of the party seeking to invoke the doctrine of estoppel is that he in good faith relied upon the conduct, act or representation of the other party. (citations omitted)

"Since it is conceded by plaintiff that it did not examine or know of the filing of the business name certificate when it extended the credit and shipped the materials, it is clear that it did not rely upon the status of the county clerk's record in any respect. Under such circumstances, it cannot utilize the theory of partnership by estoppel to impose liability upon one who was not a partner and who was a stranger to it at the time when the obligation was incurred." Reisen Lumber & Millwork Co. v. Simonelli, 98 N.J.Super. 335, 237 A.2d 303, 308 (1967).

■ It is plaintiff's position that A.R.S. § 29–311 is only applicable where, because of a failure to comply with a statute, the limited partnership never comes into existence. Appellant further argues that this section of the statute is not applicable to the situation presented in the case sub judice where the limited partnership was validly formed, but subsequently lost its status as such. With this we cannot agree. The application of A.R.S. § 29–311 should not be restricted only to cases where there was an unsuccessful attempt to organize a limited partnership under the Limited Partnership Act, Giles et al. v. Vette et al., 263 U.S. 553, 44 S.Ct. 157, 68 L.Ed. 441 (1924), affirming In re Marcuse & Co., (C.A.7th) 281 F. 928 (1922), but can apply to cases wherein the termination of the limited partnership is in question. But see Vulcan Furniture Manufacturing Corp. v. Vaughn, (Fla.App.), 168 So.2d 760 (1964).

The California courts have stated:

"Furthermore, in his answer respondent specifically renounced any claim to the property of the partnership. While we believe that at all times he was a limited partner, if the contention of the appellant that he became a general partner through the mere execution and publication of the certificate of fictitious name is correct, then the renunciation pursuant to section 15511 of the Corporations Code would serve to justify a judgment in his favor, as the trial court found that he believed that he was a limited partner and that he acted in good faith. (citations omitted)." J. C. Wattenbarger & Sons v. Sanders, 30 Cal.Rptr. 910, 914, 216 Cal.App.2d 495 (1963).

Judgment affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.