### BRIARGATE CONDOMINIUM ASSOCIATION, INCORPORATED, Plaintiff–Appellee,

v.

### Judith Turner CARPENTER, a/k/a Judy Hicks, Defendant–Appellant,

and

### Briargate Homes, a North Carolina Partnership; Harry C. Grimmer; Vernon C. Smith; William E. Goodall, Jr.; Porter W. Hicks; Gerald C. Bullock; Linwood E. Ham, Defendants.

### No. 91–1890.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1992.

Decided Sept. 30, 1992.

Charles William Sydnor Thompson, Parker, Poe, Adams & Bernstein, Charlotte, N.C., argued (David N. Allen, Craig T. Lynch, Parker, Poe, Adams & Bernstein, Charlotte, N.C., Stephen F. McKinney, Haynsworth, Marion, McKay & Guerard, Columbia, S.C., on brief), for defendant-appellant.

Michael Hart Montgomery, Lide, Montgomery & Potts, P.C., Columbia, S.C., argued (Vinton D. Lide, on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.

## OPINION

HAMILTON, Circuit Judge:

Judith Carpenter appeals the decision of the district court, entered after a trial to the bench, holding her liable as a general partner for debts of the Briargate Homes partnership (Briargate Homes or the Partnership) to Briargate Condominium Association, Incorporated (the Association). Carpenter asserts that the district court erred in concluding that she had not effectively withdrawn from the Partnership pursuant to N.C.Gen.Stat. § 59–304 and was, therefore, liable as a general partner for the partnership debts. For the reasons set forth below, we vacate the judgment of the district court and remand for additional fact-finding by that court.

## I

This is a collection action. Briargate Homes was a North Carolina partnership which purchased several units in the Briargate Condominium complex in Richland County, South Carolina. By the terms of the master deed for the condominium property and the bylaws of the Association, the Association was entitled to levy assessments or "regime fees" against unit owners for maintenance, repair, and replacement of common areas in the complex and to sue for unpaid fees. The Partnership failed to pay assessed fees in the amount of $85,106.08 as of December 1, 1988, some of which accrued prior to February 1988 and some afterward. Five of Carpenter's six individual codefendants in this collec-

tion action settled with the Association for a total sum of $25,000, which was credited against the indebtedness.[1] At the time of the district court's order of December 4, 1991, the total amount of fees and interest assessed against Carpenter individually and the Partnership was $104,146.75.[2]

Briargate Homes was formed in the latter part of 1984 when William E. Goodall, Jr., Carpenter's accountant at that time, induced her and other of his clients to invest in the Partnership as a tax shelter. Goodall received funds from Carpenter and her then-husband Hicks to purchase units in the Briargate Condominium complex on behalf of the Partnership. While Carpenter contends that she believed she was investing in a limited partnership, Briargate Homes operated as a general partnership from its inception. No attempt was ever made to achieve actual or substantial compliance with the statutes governing the formation of a limited partnership. *See* N.C.Gen Stat. § 59–201 (requiring filing of prescribed certificate for formation of limited partnership); *Atlanta Stove Works, Inc. v. Keel*, 255 N.C. 421, 121 S.E.2d 607, 608 (1961) (finding general partnership where there was neither actual nor substantial compliance with predecessor statute, N.C.Gen.Stat. § 59–2, governing formation of limited partnerships). Despite the deposition testimony of Hicks offered at trial and Carpenter's contentions, the district court concluded that Briargate Homes had never been represented as anything other than a general partnership.

At trial, there was extensive testimony concerning Carpenter's knowledge and belief about the status of the Partnership. Carpenter did not sign the Briargate Homes partnership agreement. She contends, and the district court so concluded, that she never personally saw copies of the K–1 partnership tax forms, which clearly identified her as a general partner in Briargate Homes. Carpenter claimed deductions respecting partnership losses and profits on her tax returns which were, apparently, only allowable to her if she was a general partner, not a limited partner.[3]

As early as April 1987, incident to her divorce, Carpenter or her attorneys had in their possession documents transferring her husband's share of Briargate Homes to her. The transfer documents explicitly state that Briargate Homes was a general partnership and that the interest transferred was a general partnership interest. Similarly, in June 1987, Carpenter attended a partnership meeting in which she was presented with documents which explicitly identified Briargate Homes as a general partnership. She did not sign these documents, but asserts that she took them to her lawyer for review. In December 1987, Carpenter attended another partnership meeting where she was again made aware that Briargate Homes was a general, not a limited, partnership.

On February 5, 1988, only days after a deposition in another case in which she was informed that she might be liable as a general partner, Carpenter notified the other partners and the Association by mail that she was withdrawing from any equity participation and renouncing any interest in the profits of Briargate Homes. Carpenter is an experienced businesswoman, serves on the board of directors of a bank, and has ready access to legal and other professional advice.

II

The Association seeks to hold Carpenter liable for the balance of the fees owed by Briargate Homes on the basis that Carpenter was a general partner of Briargate

---

1. The sixth codefendant, Porter Hicks, Carpenter's ex-husband, is in bankruptcy.

2. The judgment also included $24,544.00 in attorney's fees, expenses in the amount of $2,055.21, and additional interest at the contract rate on the fee portion of the judgment and at the federal rate of interest on the fees and expenses portion of the judgment.

3. Following her renunciation of participation in Briargate Homes in February 1988, Carpenter repaid the Internal Revenue Service (IRS) for certain deductions taken with respect to Briargate Homes. The propriety or necessity of such repayment is not before the court on this appeal. *See infra* note 16.

Homes. Carpenter's defense is grounded in N.C.Gen.Stat. § 59–304, which provides:

(a) Except as provided in subsection (b), a person who makes a contribution to a business enterprise and erroneously but in good faith believes that he has become a limited partner in the enterprise is not a general partner in the enterprise and is not bound by its obligations by reason of making the contribution, receiving distributions from the enterprise, or exercising any rights of a limited partner, if, on ascertaining the mistake, he:

(1) Causes an appropriate certificate of limited partnership to be executed and filed; or

(2) Withdraws from future equity participation in the enterprise.

(b) A person who makes a contribution of the kind described in subsection (a) is liable as a general partner to any third party who transacts business with the enterprise (i) before the person withdraws from the enterprise, or (ii) before the person gives notice to the partnership of his withdrawal from future equity participation, but only if the third party actually believed in good faith that the person was a general partner at the time of the transaction.

*Id.*[4] The North Carolina state appellate courts have not construed and applied this statute. In applying the statute to this case, therefore, this court must decide how the North Carolina Supreme Court would interpret and apply the statute if presented with the factual issues in this case.[5] *See Louthian v. State Farm Mutual Insurance Co.*, 493 F.2d 240, 242 (4th Cir.1974).

Carpenter attacks the decision of the district court on two grounds. First, Carpenter argues that the district court erred in concluding that her notice of withdrawal from Briargate Homes was untimely and, therefore, ineffective to preclude liability as a general partner. Second, she asserts that the district court erred in applying an "objective" standard to determine if and when Carpenter met the good faith belief element of the statute. Each contention is addressed in turn.[6]

## A

In *Blow v. Shaughnessy*, 68 N.C.App. 1, 313 S.E.2d 868, 878–79, *cert. denied*, 311

---

**4.** This statute became effective October 1, 1986, when North Carolina adopted, with modifications not relevant to this case, the Revised Uniform Limited Partnership Act as proposed by the National Conference of Commissioners on Uniform Laws. N.C.Gen.Stat. § 59–101, 1104. It replaced N.C.Gen.Stat. § 59–11, which stated:

A person who has contributed to the capital of a business conducted by a person or partnership erroneously believing that he has become a limited partner in a limited partnership, is not, by reason of his exercise of the rights of a limited partner, a general partner with the person or in the partnership carrying on the business, or bound by the obligations of such person or partnership; provided that on ascertaining the mistake he promptly renounces his interest in the profits of the business, or other compensation by way of income.

*Id.* (quoted in *Blow v. Shaughnessy*, 68 N.C.App. 1, 313 S.E.2d 868, 878–79 *cert. denied*, 311 N.C. 751, 321 S.E.2d 127 (1984)).

**5.** Since this issue is a matter of first impression, it presents a compelling situation for certification to the North Carolina Supreme Court. Regrettably, North Carolina is the only state in this circuit which does not provide for such procedure.

**6.** At oral argument, counsel for the Association contended that § 59–304 might not be applicable to a case like this where the enterprise, Briargate Homes, was founded as and always existed as a general partnership. Counsel particularly noted that in *Vette v. Giles (In Re Marcuse & Co.)*, 281 F. 928 (7th Cir.1922), *aff'd, Giles v. Vette*, 263 U.S. 553, 44 S.Ct. 157, 68 L.Ed. 441 (1924), the courts, in applying § 11 of the Uniform Limited Partnership Act of 1916 (the basis of N.C.Gen.Stat. § 59–11, the predecessor statute to § 59–304) were dealing with a situation where the parties attempted to form a limited partnership, but did so in a defective manner. As the Seventh Circuit noted, however, application of § 11 "is not limited to instances where there has been an attempted compliance with the provision of the new act. It includes in its terms any person who at any time contributed to a partnership, erroneously believing himself to be a limited partner." *Vette*, 281 F. at 935. *See also Graybar Electric Company v. Lowe*, 11 Ariz.App. 116, 462 P.2d 413, 417 (1969). *But see Vulcan Furniture Manufacturing Corp. v. Vaughn*, 168 So.2d 760 (Fla. App.1964). We conclude that North Carolina would apply § 59–304 broadly, as suggested by *Vette* with respect to § 11. *Cf. Blow*, 313 S.E.2d at 879 (applying predecessor statute, N.C.Gen. Stat. § 59–11, broadly in light of Supreme Court holding in *Giles v. Vette* ).

N.C. 751, 321 S.E.2d 127 (1984), the North Carolina Court of Appeals recognized that old N.C.Gen.Stat. § 59–11, see *supra* note 4, was "enacted in part to relax the strict rule of law that a general partnership existed in all cases where a purported limited partnership failed to comply with the applicable statute." *Id.* at 879 (citing *Giles v. Vette*, 263 U.S. 553, 563, 44 S.Ct. 157, 160, 68 L.Ed. 441 (1924)). Though there are significant differences in the language of the old statute and § 59–304, we believe that § 59–304 was adopted and would be applied with this same salutary purpose.

Given that purpose, we turn to the language of the statute. Subsection (a) specifies that a person who has contributed to a business enterprise "is not a general partner in the enterprise and is not bound by its obligations" [except under circumstances specified in subsection (b)] if two conditions are met.

First, at the time the person contributes to the business, the person must have a "good faith" belief "that he has become a limited partner" in the enterprise rather than a general partner.[7] If there is no good faith basis for believing that a business is a limited partnership at the time of contribution, then there is no basis for obtaining relief under the statute. In such situation, assuming a general partnership was created, see N.C.Gen.Stat. § 59–37, rules of law controlling liability to third parties by general partners would govern. *See, e.g.,* N.C.Gen.Stat. §§ 59–45, –65, –66.

Second, the person must "on ascertaining the mistake" take one of two courses of action. He may correct the mistake in the form of the enterprise by filing an appropriate certificate of limited partnership. N.C.Gen.Stat. §§ 59–304(a)(1). *See also* N.C.Gen.Stat. § 59–201 (prescribing form of proper certificate). Under this option, the person may continue in the business

with the limited liability he believed he possessed at the time of contribution. In the alternative, the person may give notice[8] and withdraw completely from future equity participation in the business. N.C.Gen.Stat. § 59–304(a)(2). Unlike the predecessor statute, § 59–304 provides no specific time frame for pursuing either course of action.

If the two elements are met—a good faith belief at the time of contribution and either a proper certificate is filed or notice of withdrawal is given—then the person is liable *only* as a limited partner with respect to third parties dealing with the enterprise. Satisfaction of the two elements in subsection (a) effectively cuts off all personal liability as a general partner, unless subsection (b) applies.

Subsection (b) sets forth the *only* circumstances under which a person who meets the requirements of subsection (a) may incur liability like a general partner. Personal liability to third parties arises when the third party transacts business with the enterprise before the person files a proper certificate or withdraws. Imposition of liability is limited, however, by the requirement that at the time he transacts business, the third party "actually believed in good faith that the person was a general partner at the time of the transaction." N.C.Gen.Stat. § 59–304(b). Reliance on the part of the third party in the resources of the defendant as a general partner is absolutely essential before liability may be imposed for transactions occurring before withdrawal.

Unlike its predecessor statute, N.C.Gen. Stat. § 59–11, see *supra* note 4, § 59–304 does not specify how quickly a proper certificate or notice of withdrawal must be filed after a person ascertains he is not a limited partner. The current statute delet-

---

7. What constitutes a "good faith" belief is discussed under Part II, section B, *infra.*

8. The statute does not specify the form of such notice or the procedures by which such notice is to be served. *See Graybar Electric Company v. Lowe*, 11 Ariz.App. 116, 462 P.2d 413, 416 (1969) (holding that written notice of withdrawal to the creditor is sufficient notice of withdrawal as

to that creditor under statute based on § 11 of the Uniform Partnership Act of 1916). *See also* N.C.Gen.Stat. §§ 59–33(b)(2), –36 (stating that notice provisions of Uniform Partnership Act apply to limited partnerships and that a written statement of fact delivered by mail is sufficient notice). Plaintiff has not contested the form of the notice given in this case.

ed the word "promptly" contained in the prior statute. The present statute also added the language in subsection (b) regarding reliance by the third party as a prerequisite for imposing liability. This difference in the old and new statutes is significant. It reflects a shift in emphasis away from the speed with which withdrawal is effected to an emphasis on protection of reliance by third parties doing business with the enterprise. The key to liability is no longer, therefore, how quickly the first party corrects the error, but rather reliance by the third party on that person's apparent status as a general partner in transacting business with the enterprise.[9]

The change in the statute to delete the word "promptly" and add a reliance requirement distinguishes this case from *Vidricksen v. Grover,* 363 F.2d 372 (9th Cir. 1966) and *Direct Mail Specialist, Inc. v. Brown,* 673 F.Supp. 1540 (D.Mont.1987), cases which the Association and the district court cite to assert that Carpenter's withdrawal was untimely. Both cases involved statutes patterned after § 11 of the old Uniform Limited Partnership Act with the requirement that withdrawal be effected "promptly." Both cases found the purported limited partner liable because withdraw-

al was not effected within some fixed period of time, not because some third party had relied mistakenly on the person being a general partner. *See Vidricksen,* 363 F.2d at 373; *Direct Mail,* 673 F.Supp. at 1542–43. Section 59–304 specifically deleted the time limitation and substituted a reliance test; therefore, inserting a time limitation on withdrawal by implication would appear to contravene the statute.

This interpretation of § 59–304 is sensible. It comports with the remedial purpose of the statute to relieve persons from strict liability as general partners, as occurred under prior law, when they erroneously believe themselves limited partners. *See Blow,* 313 S.E.2d at 878–79. Furthermore, it provides adequate security to third parties who deal with the business entity by recognizing their right to recovery where valuable consideration has been extended to the enterprise in reliance on the ability to hold the first party liable as a general partner for the debt incurred.

Given this interpretation of the statute, we believe the judgment of the district court must be vacated, and the case remanded to the district court for additional findings.

---

**9.** Because the application of the Revised Uniform Statute is not, by its terms, contingent on how soon a renunciation is filed, there exists the possibility that an individual could contribute with a good faith belief that a limited partnership existed, discover the mistake, and choose to sit on such knowledge. The individual could then bail out of the business when it appeared that some third party might believe he was a general partner and might look to that person's assets when transacting business with the enterprise. The fact that a person could act in such manner does not, however, necessarily harm the third party where there is in fact no reliance on the supposed status of the first party as a general partner.

The possibility that an individual could reap profits or benefits from the enterprise prior to withdrawing was recognized in the cases applying old § 11 of the Uniform Act. There was debate as to whether the word "renounces" in the statute required disgorgement of all past benefits received from the enterprise. See *Giles,* 263 U.S. at 563, 44 S.Ct. at 160 (noting that individuals returned all dividends acquired, but reserving question of whether return necessary); *Gilman Paint & Varnish Co. v. Legum,* 197 Md. 665, 80 A.2d 906, 910–11 (1951) (hold-

ing no obligation to return past profits under facts of case). In adopting § 59–304, the legislature resolved this dilemma by eliminating the word "renounce" and choosing language specifically requiring withdrawal only from "future equity participation." The Reporter's comments on § 304 note this change:

The provisions of subdivision (2) of Section 304(a) are intended to clarify an ambiguity in the prior law by providing that a person who chooses to withdraw from the enterprise in order to protect himself from liability is not required to renounce any of his then current interest in the enterprise so long as he has no further participation as an equity participant.

Revised Uniform Limited Partnership Act § 304, comment, 6 U.L.A. (Supp.1992). Thus, where a person does not act promptly upon ascertaining the mistake, this provides no basis for recovery to a third party. While such conduct might appear inequitable, it is not inequitable as to third parties without reliance as set forth in § 59–304(b). *Cf. Giles,* 263 U.S. at 561, 44 S.Ct. at 160 (applying § 11 and holding that to allow recovery "would give creditors what they are not entitled to have" because they were in no worse position because of defendants' acts).

First, the district court must determine whether or not Carpenter held a "good faith" belief that she was a limited partner at the time she initially joined and contributed to the Briargate Homes venture.[10] Contrary to Carpenter's contention at oral argument, the district court's opinion does not resolve this issue. At pages four and five of its memorandum order entered October 2, 1991, the district court made several findings, particularly a finding that Briargate Homes was, from its inception, a general partnership and was never represented as anything else to anyone. The district court did not conclusively state, however, whether or not Carpenter had a "good faith" belief that she was becoming a limited partner at that time.[11] The district court did conclude that by at least mid-1986 Carpenter could not have held a good faith belief she was a limited partner, but the key date, for purposes of the statute, is the date of the contribution to the enterprise. Should the district court conclude that Carpenter did not have a good faith belief that she was a limited partner at the time of the initial contribution, then the statute affords her no relief.

Second, assuming Carpenter demonstrates a good faith belief at the time she invested, then her notice of withdrawal effectively cut off liability for any fees accrued after such notice. To hold Carpenter liable for fees accrued prior to the notice, the district court must determine if and when the Association "actually believed in good faith that the person [Carpenter] was a general partner." N.C.Gen.Stat. § 59–304(b). Carpenter may be held liable only for those assessments made in reliance on the belief that the Association could look to the assets of Carpenter as a general partner to satisfy the debt. Absent such reliance, no personal liability as a general partner attaches to Carpenter for the debts of the Partnership to the Association.

Carpenter points to statements in the record indicating that agents of the Association apparently believed they were dealing with a limited partnership and were totally unaware of Carpenter's interest in the Partnership until the time of her notice withdrawing from any equity participation and renouncing any interest in the profits of Briargate Homes. To the extent the Association was unaware of Carpenter's participation and believed Briargate Homes was a limited partnership, it would appear impossible to conclude that the Association was misled to believe it could rely on Carpenter's assets in conducting business with Briargate Homes.[12] We decline, however, to rule on the issue in the first instance. It does not appear that this issue received much attention at trial. The district court should, on remand, review the record and may take additional evidence if necessary to aid its fact-finding on this issue.

## B

Carpenter also contends that the district court misapplied the "good faith" belief

10. We do not hold that the protection of § 59–304 is only available to those who held a good faith belief they were limited partners at the time of their *initial* contribution to the enterprise. The statute speaks only of contribution generally. Though not presented on the facts of this case, one could conceivably initially invest as a general partner, but be persuaded at the time of a subsequent contribution that he is a limited partner. The rules governing personal liability discussed above, and the "good faith" requirements discussed in Part II, B, *infra,* would apply. In this particular case, Carpenter contends she believed she was a limited partner from the beginning; therefore, the inquiry must focus on her belief at the time of her initial contribution.

11. There was a direct factual dispute concerning whether or not Goodall had ever represented that Briargate Homes was a limited partnership. The district court apparently rejected the testimony of Hicks by deposition, and Carpenter, at trial, that Goodall represented that Briargate Homes was a limited partnership and accepted Goodall's testimony to the contrary. *See* Joint Appendix at 87.

12. The statute obviously creates something of a burden on a business to investigate other enterprises with whom it will conduct a transaction to determine who may be responsible for any debt incurred. In this case, if the Association had investigated the records and found no certificate of limited partnership, as required by statute, and had inquired of any of the partners concerning the members of the Partnership, there would presumably be a good faith basis for believing that Briargate Homes was a general partnership and Carpenter was a general partner. Such evidence, if it exists, may be presented to the district court on remand.

component of § 59–304 by adopting an objective, rather than a subjective, test for assessing good faith belief. Because the issue of good faith belief must be decided on remand, we address this issue below.

We believe that the North Carolina Supreme Court would adopt an objective standard when applying the good faith requirement in § 59–304. The statutory language itself suggests that a purely subjective approach to assessing what a person claiming the protection of § 59–304 believes is inappropriate. Protection is not afforded for just any subjective belief, no matter how unreasonable, but rather only for a "good faith" belief. Good faith encompasses "freedom from knowledge of circumstances which ought to put the holder on inquiry.... [and] being faithful to one's duty or obligation." Black's Law Dictionary 623–24 (5th ed. 1979). Thus, while the inquiry necessarily entails determining what the individual person seeking to withdraw believed at the time he contributed to the enterprise, the inquiry must go further and ask whether such a belief was reasonable under the circumstances facing that particular individual.

Case law construing application of § 11 of the Uniform Limited Partnership Act provides some guidance on this issue. Though § 11 does not qualify the term "believing" with the term "good faith," courts applying § 11 assessed the alleged erroneous belief for objective indicia of good faith rather than accepting the mere protestations of the individual defendant. In *Giles*, the circuit court, in addressing "the good faith of the asserted erroneous belief" and the promptness with which the interest in the business was renounced, noted the reasonableness of the belief of Hecht and Finn, the withdrawing parties. The court observed:

"One can scarcely imagine circumstances under which error might have been more readily induced than those which this record presents. The new law had manifestly not then been published, and the

three days which intervened between the time it became law and the time it became effective hardly gave opportunity for public discussion thereon. After the business started it does not appear that there was occasion for investigation as to its organization, nor that this was challenged, until about the time the concern got into difficulty. Even the New York Stock Exchange does not appear to have questioned its validity as a limited partnership. Consideration of the very exceptional circumstances shown induce quite inevitably the conclusion that, during all the time this business was carried on, it was in the honest, though erroneous, belief of all connected with it that it was a limited partnership...."

*Giles*, 281 F. at 936. Similarly, in *Continental Waste System, Inc. v. Zoso Partners*, 727 F.Supp. 1143 (N.D.Ill.1989), the district court, interpreting Illinois' statute patterned after § 11, applied an objective standard. In determining whether or not an issue of material fact existed precluding summary judgment for the person seeking to renounce, the court noted two events which indicated that the person "was or should have been aware" of his status as a general partner.[13] *Id.* at 1147.

Carpenter asserts that other provisions of the North Carolina Revised Uniform Limited Partnership Act use language such as "knew or should have known," to indicate when an objective standard should be employed; therefore, the use of the phrase "in good faith believes" in § 59–304(a) must be subjective. *See* N.C.Gen.Stat. § 59–207(1). We are not persuaded, however. The term "good faith" necessarily qualifies the term "believes" to exclude a belief that is utterly foolish when evaluated in light of the circumstances facing a particular individual at the time they formed or held such belief. To adopt the position of Carpenter would drain the phrase "good faith" of all meaning and, in fact, redefine the term to protect a party's deliberate

13. The district court mistakenly stated that *Continental Waste* involved application of § 304 of the Revised Uniform Limited Partnership Act, the basis for N.C.Gen.Stat. § 59–304, rather than

§ 11 of the old Uniform Limited Partnership Act. See District Court Order, p. 15, Joint Appendix at 97.

indifference to his or her personal and financial affairs.

Carpenter also argues that the district court erred in its discussion of certain tax law consequences of limited partnerships and capital calls in limited partnerships when assessing whether she met the good faith belief requirement. In making its findings on tax consequences and capital calls, the district court apparently relied on the testimony of Goodall. *See* Joint Appendix at 88 n. 2, 89 n. 5. There is no record, however, of Goodall being qualified as an expert on these matters. He was apparently called only as a fact witness; therefore, the testimony was of dubious credibility.[14] For example, Carpenter notes that while Goodall testified that capital calls never occur in limited partnerships, North Carolina law specifically provides rules governing such calls. N.C.Gen.Stat. § 59–502 (requiring that all promises to contribute by limited partners must be in writing to be enforceable).[15] On remand, the district court should carefully reevaluate the validity of Goodall's assertions on these matters and may, if it so desires, seek expert advice. We note, regardless of Goodall's testimony, that Carpenter apparently could not take the tax deductions she in fact originally took on her tax returns as a limited partner, which is evidenced by the amendment of her tax returns [as to deductions for Briargate Homes] following her notice of withdrawal.[16]

### III

In conclusion, we vacate the judgment of the district court and remand for further proceedings in accordance with this opinion. The district court should determine whether, at the time of contribution, Carpenter had a "good faith" belief that she had joined Briargate Homes as a limited partner. If she did not, § 59–304 has no application and affords Carpenter no relief. If she did, then her notice is effective to terminate all personal liability accrued after the notice was given. In addition, no personal liability attaches for assessments accrued before the notice unless the Association specifically believed in good faith that Carpenter was a general partner in Briargate Homes at the time it transacted business with the Partnership and the subject liabilities were incurred.

VACATED AND REMANDED.

---

14. The Association notes that no objection was raised as to the admissibility of Goodall's testimony in this regard.

15. The additional contributions made by Carpenter were not made pursuant to written agreement, but were apparently made voluntarily.

16. We need not address whether Carpenter was required to make these changes in order to receive § 59–304 protection. *See supra* n. 8.